PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

In Re: BILLY WILLIAMS,

*Movant.*

No. 02-196

On Motion for Authorization to
File Successive Application.

Argued: February 26, 2003

Decided: May 27, 2003

Before WILKINS, Chief Judge, and WILKINSON and
MOTZ, Circuit Judges.

Motion denied by published opinion. Chief Judge Wilkins wrote the
opinion, in which Judge Wilkinson and Judge Motz joined.

## COUNSEL

**ARGUED:** Brian Marc Feldman, UNIVERSITY OF VIRGINIA
SCHOOL OF LAW APPELLATE LITIGATION CLINIC, Char-
lottesville, Virginia, for Movant. Steven Andrew Witmer, Assistant
Attorney General, OFFICE OF THE ATTORNEY GENERAL, Rich-
mond, Virginia, for Respondent. **ON BRIEF:** Neal L. Walters, UNI-
VERSITY OF VIRGINIA SCHOOL OF LAW APPELLATE
LITIGATION CLINIC, Charlottesville, Virginia, for Movant. Jerry
W. Kilgore, Attorney General of Virginia, OFFICE OF THE
ATTORNEY GENERAL, Richmond, Virginia, for Respondent.

**OPINION**

WILKINS, Chief Judge:

Billy Williams moves for authorization to file a successive habeas corpus application pursuant to 28 U.S.C.A. § 2254 (West 1994 & Supp. 2002). *See* 28 U.S.C.A. § 2244(b) (West Supp. 2002). We deny this motion.

I.

According to his motion for pre-filing authorization (PFA motion), Williams is presently serving a twenty-five year sentence for second degree murder and related offenses, for which he was convicted in 1997 in Virginia state court. He alleges that the primary evidence against him came from two eyewitnesses, Torrey Wright and Richard Teach. These witnesses testified that they were riding in a vehicle with Wright's daughter when Teach saw Williams and called out to him; Williams then began shooting at the vehicle, injuring Wright and killing his daughter. Two defense witnesses countered that Williams was with them in another part of town at the time of the shooting.

The jury, apparently deeming the prosecution's evidence more credible than Williams' alibi witnesses, found Williams guilty as charged. After an unsuccessful direct appeal, Williams filed a § 2254 petition in United States District Court. The petition was denied on November 15, 2001, and this court dismissed Williams' ensuing appeal, *see Williams v. Angelone*, 26 Fed. Appx. 373 (4th Cir.) (per curiam), *cert. denied*, 123 S. Ct. 177 (2002).

While his § 2254 petition was pending in the district court, Williams encountered Richard Teach at the Richmond City Jail. Teach allegedly told Williams that his testimony against Williams was perjured, that he testified as he did because criminal charges were pending against him at the time of Williams' trial, and that those charges were later dropped. Williams claims that the prosecutor never disclosed any of these facts, even after Teach testified that he had no charges pending against him.

Acting on this information, Williams filed a habeas corpus petition in state court, which was denied. Williams then filed his PFA motion in this court. Attached to this motion is the § 2254 application that Williams wishes to file ("Proposed Application"). The Proposed Application reiterates two claims from Williams' first § 2254 application—ineffective assistance of counsel and denial of the right to appeal—and presents the following new claim:

> On June 27, 2001 Petitioner learned through Prosecutor witness in this Case (Richard Teach) that his testimony was perjury in that he testified he wasn't charged with any crimes, at Petitioner trial, however on June 27, 2001 he admitted to Petitioner that Prior to his trial he was charged with crimes in order to testify[.]

Proposed Application at 6.

## II.

As modified by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), § 2244(b) imposes the following limits on review of successive § 2254 applications:

> (1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.

> (2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless—

> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

In addition, § 2244(b)(3)(A) provides that a successive application may not be filed in the district court without authorization from the relevant court of appeals. "The court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the application satisfies the requirements of this subsection." 28 U.S.C.A. § 2244(b)(3)(C). Section 2244(b)(3)(D) requires the court to "grant or deny the authorization to file a second or successive application not later than 30 days after the filing of the motion."

Williams contends that his PFA motion must be granted because it has been pending for more than 30 days. In the alternative, Williams asserts that his proposed application meets the standard for pre-filing authorization. We disagree with both of these arguments.

A.

Williams initially maintains that the 30-day deadline established by § 2244(b)(3)(D) may not be extended and that the appropriate remedy for a violation of this deadline is to grant the PFA motion. This argument founders on circuit precedent. In *In re Vial*, 115 F.3d 1192 (4th Cir. 1997) (en banc), the deadline passed before the court ruled on a PFA motion, but we indicated that extended consideration was appropriate because "the importance of the issue presented justified the delay." *Id.* at 1194 n.3. This statement defeats Williams' claim that this court may not extend the 30-day deadline.

The other courts of appeals to consider this question have likewise concluded that the § 2244(b)(3)(D) deadline is "precatory, not mandatory." *United States v. Barrett*, 178 F.3d 34, 42 n.2 (1st Cir. 1999) (internal quotation marks omitted); *accord Browning v. United States*, 241 F.3d 1262, 1263 (10th Cir. 2001) (en banc); *Gray-Bey v. United States*, 201 F.3d 866, 867 (7th Cir. 2000); *In re Siggers*, 132 F.3d 333, 336 (6th Cir. 1997); *Galtieri v. United States*, 128 F.3d 33, 36-37 (2d

Cir. 1997). *But cf. Gray-Bey*, 201 F.3d at 871-75 (Easterbrook, J., dissenting) (criticizing decisions—including *Vial*—that allow courts of appeals to extend the 30-day deadline). The Sixth Circuit has offered a particularly persuasive explanation for this position, premised on the general rule that a "statutory time period is not mandatory unless it *both* expressly requires [action] within a particular time period *and* specifies a consequence for failure to comply with the provision." *Siggers*, 132 F.3d at 336 (internal quotation marks omitted); *accord Holland v. Pardee Coal Co.*, 269 F.3d 424, 432 (4th Cir. 2001) (noting, with citation to *Siggers*, the "recognized canon of construction which instructs against treating statutory timing provisions as jurisdictional, unless such a consequence is clearly indicated"), *cert. denied*, 123 S. Ct. 986 (2003). The Sixth Circuit concluded that because Congress prescribed no consequence for noncompliance with § 2244(b)(3)(D), the provision is merely "hortatory or advisory." *Siggers*, 132 F.3d at 336.

Williams asserts that these decisions must be reexamined in light of *Tyler v. Cain*, 533 U.S. 656 (2001). In *Tyler*, the Supreme Court held that a PFA motion may be granted under § 2244(b)(2)(A) only if the Supreme Court has held that a particular rule of constitutional law applies retroactively to cases on collateral review. *See id.* at 663. In reaching this holding, the Court relied in part on § 2244(b)(3)(D):

> The court of appeals must make a decision on [a PFA motion] within 30 days. . . . It is unlikely that a court of appeals could make [the necessary] determination in the allotted time if it had to do more than simply rely on Supreme Court holdings on retroactivity. The stringent time limit thus suggests that the courts of appeals do not have to engage in the difficult legal analysis that can be required to determine questions of retroactivity in the first instance.

*Id.* at 664.

Nothing in *Tyler* suggests that § 2244(b)(3)(D) is mandatory (let alone that the remedy for failure to comply with the 30-day deadline is to grant pre-filing authorization). In *Tyler*, the Supreme Court fashioned a rule that would enable courts of appeals to comply with § 2244(b)(3)(D) in the vast majority of cases. This is not inconsistent,

however, with our prior determination that we may exceed the 30-day limitation in the exceptional cases that cannot be resolved more quickly. *Cf. Galtieri*, 128 F.3d at 37 (stating that PFA motions usually present relatively simple questions but, when they do not, "we do not think that Congress wanted courts to forgo reasoned adjudication"). Accordingly, we adhere to our determination in *Vial* that we may consider a PFA motion for longer than 30 days if the importance and complexity of the issues presented justify such extended consideration.[1]

B.

Because § 2244(b)(3)(D) does not compel us to grant Williams' PFA motion, we must determine whether the motion makes "a prima facie showing" that Williams can satisfy the requirements of § 2244(b). 28 U.S.C.A. § 2244(b)(3)(C). To make this determination, we will examine each of the claims in the Proposed Application; if any claim meets the statutory threshold, we will grant the PFA motion and allow Williams to file the Proposed Application in its entirety. *See United States v. Winestock*, No. 02-6304, slip op. at 6-7 (4th Cir. Apr. 25, 2003).

1.

At the outset, we consider the meaning of the statutory term "prima facie showing." Other courts of appeals differ over whether this is an exacting requirement or a relatively lenient one. *Compare, e.g.*, *Rodriguez v. Superintendent*, 139 F.3d 270, 273 (1st Cir. 1998) (characterizing the prima facie showing as "a high hurdle"), *with, e.g., Bell v. United States*, 296 F.3d 127, 128 (2d Cir. 2002) (per curiam) (stating that § 2244(b)(3)(C) does "not [establish] a particularly high standard"). *Cf.* Randal S. Jeffrey, *Successive Habeas Corpus Petitions and Section 2255 Motions After the Antiterrorism and Effective Death Penalty Act of 1996: Emerging Procedural and Substantive Issues*, 84 Marq. L. Rev. 43, 121-23 (2000) (arguing that courts of appeals should require only a "minimal showing"). Despite these divergent characterizations, however, every court to decide the question has

---

[1]Williams does not argue that, if extended consideration is generally permissible, it is inappropriate here.

adopted the definition of "prima facie showing" originally propounded by the Seventh Circuit:

> By "prima facie showing" we understand . . . simply a sufficient showing of possible merit to warrant a fuller exploration by the district court. . . . If in light of the documents submitted with the [PFA motion] it appears reasonably likely that the [motion] satisfies the stringent requirements for the filing of a second or successive petition, we shall grant the [motion].

*Bennett v. United States*, 119 F.3d 468, 469-70 (7th Cir. 1997); *see Bell*, 296 F.3d at 128; *Reyes-Requena v. United States*, 243 F.3d 893, 899 (5th Cir. 2001); *Thompson v. Calderon*, 151 F.3d 918, 925 (9th Cir. 1998) (en banc); *Rodriguez*, 139 F.3d at 273. We join our sister courts and adopt the *Bennett* standard.

One clarification to this standard is in order. The Third Circuit has expressed doubts about *Bennett*, in dictum, on the basis that it seems to require review of the merits during the pre-filing authorization stage. *See In re Turner*, 267 F.3d 225, 228 n.2 (3d Cir. 2001). However, *Bennett* emphasizes that the § 2244(b) inquiry must be resolved before the district court may consider the merits of a claim within a successive application. *See Bennett*, 119 F.3d at 470. Thus, we infer that the "showing of possible merit" alluded to in *Bennett*, *id.* at 469, relates to the possibility that the claims in a successive application will satisfy "the stringent requirements for the filing of a second or successive petition," *id.* at 469-70, not the possibility that the claims will ultimately warrant a decision in favor of the applicant. While this determination may entail a cursory glance at the merits—for example, an applicant cannot show that he would not have been convicted "but for constitutional error" without adequately alleging some constitutional violation—the focus of the inquiry must always remain on the § 2244(b)(2) standards.

### 2.

We next consider whether Williams has made the requisite showing as to any of his claims. This determination is quite straightforward with respect to the two claims recycled from Williams' previous

§ 2254 application. These may not form the basis for the grant of pre-filing authorization because review is barred under § 2244(b)(1). *See Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir.) (per curiam), *cert. denied*, 534 U.S. 1031 (2001). We therefore must focus on the third claim, which alleges that Richard Teach perjured himself at Williams' trial. As this claim plainly does not rely on any new rule of constitutional law, we must decide whether Williams' allegations satisfy § 2244(b)(2)(B).

Section 2244(b)(2)(B) has three essential components. First, the claim must rely on a "factual predicate [that] could not have been discovered previously through the exercise of due diligence." 28 U.S.C.A. § 2244(b)(2)(B)(i). Second, the claim must describe constitutional error. *See id.* § 2244(b)(2)(B)(ii). Third, the newly discovered facts upon which the claim is based, when viewed in conjunction with "the evidence as a whole," must "be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." *Id.*[2]

---

[2]Although § 2244(b)(2)(B)(ii) requires us to consider "the evidence as a whole," we will rarely have the full trial record before us. Moreover, even if we had the full record, it would often be difficult to examine that record within the 30-day review period established by § 2244(b)(3)(D). In most cases, therefore, we will be constrained to rely on the description of the trial record provided by the PFA motion. *Cf. In re Boshears*, 110 F.3d 1538, 1541 & n.1 (11th Cir. 1997) (stating that factual allegations in the PFA motion should be accepted as true unless "conclusively foreclose[d]" by the record).

As we will explain in the text, Williams' description of the evidence at his trial leads us to conclude that he is not entitled to relief. We need not decide here whether we would be willing to consider a new PFA motion reiterating the current claim and providing additional information favorable to Williams. *Compare Bell v. United States*, 296 F.3d 127, 129 (2d Cir. 2002) (per curiam) (denying PFA motion without prejudice in order to allow prisoner to submit new motion providing more information), *with Bennett v. United States*, 119 F.3d 470, 471-72 (7th Cir. 1997) (holding that prisoner may not file second PFA motion offering additional support for claim raised in first PFA motion).

The parties disagree about whether Williams has met the first of these requirements. Respondent asserts that Williams cannot raise any claims arising from his conversation with Teach because that conversation occurred before Williams' first § 2254 application *was denied*. Williams counters that the factual predicate was discovered after the previous application *was filed* and that he could not have exhausted his new claims in state court and amended his § 2254 petition while that petition was pending. Because we conclude that Williams' PFA motion must be denied for other reasons, we need not resolve this question. *Cf. Evans v. Smith*, 220 F.3d 306, 322 (4th Cir. 2000) (suggesting that prisoner who discovers new evidence while § 2254 application is pending may later rely on that evidence in PFA motion).

The next question is whether Williams has alleged constitutional error. Construing the *pro se* Proposed Application liberally, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam), we conclude that it adequately alleges a claim that the prosecutor suborned perjury in violation of due process, *see Napue v. Illinois*, 360 U.S. 264, 269 (1959).

Finally, we must determine whether Williams has made a prima facie showing that Teach's recantation of his trial testimony, viewed together with the other evidence in the record, establishes by clear and convincing evidence that but for the alleged subornation of perjury, no reasonable factfinder would have found Williams guilty of the charges against him. In resolving this question, we are guided by the opinion of the Supreme Court in *Sawyer v. Whitley*, 505 U.S. 333 (1992). In *Sawyer*, the Court held that a petitioner seeking to present a defaulted or abusive claim challenging a death sentence may do so if he makes an initial showing "by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state law." *Id.* at 336. As the similarities in language indicate, § 2244(b)(2)(B)(ii) substantially incorporates the *Sawyer* test.[3]

---

[3] Congress originally proposed to incorporate a modified version of the *Sawyer* standard into a provision governing stays of execution. *See* H.R. Rep. No. 104-23, at 4-5, 16 (1995). As enacted, however, the AEDPA inserted the *Sawyer* language into § 2244(b) and included a cross-

The petitioner in *Sawyer* attempted to satisfy the applicable standard by offering several pieces of new evidence, two of which are relevant here. The first was evidence tending to undermine the credibility of a key prosecution witness. The Supreme Court stated that "[t]his sort of latter-day evidence brought forward to impeach a prosecution witness will seldom, if ever, make a clear and convincing showing that no reasonable juror would have believed the heart of [the witness'] account of petitioner's actions." *Id.* at 349. The second piece of evidence was a statement by a child who witnessed the murder of which Sawyer was convicted; although the child claimed that Sawyer had tried to prevent the killing, the Court concluded that this evidence was not compelling in light of other evidence demonstrating that Sawyer willingly participated in the crime. *See id.* at 349-50, 350 n.19.

Williams' new evidence is very similar to the evidence offered in *Sawyer*. Evidence of charges pending against Teach could be used for impeachment, but that alone does not satisfy Williams' burden. And, while Teach's recantation supports Williams' assertion of innocence, it does not clearly and convincingly outweigh the unimpeached eyewitness testimony of Torrey Wright, just as the statement in *Sawyer* did not outweigh untainted evidence of Sawyer's culpability. Because Williams' proffer would fail under *Sawyer*, it likewise fails under § 2244(b)(2)(B).

---

reference to § 2244(b) in the provision relating to stays of execution, *see* 28 U.S.C.A. § 2262(c) (West Supp. 2002).

One significant difference between *Sawyer* and § 2244(b) is that *Sawyer* addresses eligibility for the death penalty while § 2244(b)(2)(B)(ii) refers to "guilt[ ] of the underlying offense." This is consistent with the congressional intent to restrict application of the modified *Sawyer* standard to "claims impugning the reliability of the petitioner's conviction for the underlying offense." H.R. Rep. No. 104-23, at 16; *see Wright v. Angelone*, 151 F.3d 151, 164 n.8 (4th Cir. 1998) (discussing cases holding that court may not grant PFA motion based on evidence of ineligibility for death penalty). Although Congress did not adopt the *Sawyer* test without alterations, *Sawyer* still assists us in understanding how to apply § 2244(b)(2)(B)(ii). *Cf. Slack v. McDaniel*, 529 U.S. 473, 483 (2000) (examining Supreme Court decision that was codified, with modifications, in another AEDPA provision).

### III.

For the foregoing reasons, we deny Williams' motion to file a successive § 2254 application.

*MOTION DENIED*