**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-400

In re:  DONELL J. BLOUNT, SR.,

        Movant.

On Motion for Authorization to File Successive Application.

Argued:  October 31, 2019                    Decided:  January 22, 2020

Before MOTZ, DIAZ, and THACKER, Circuit Judges.

Motion denied by unpublished opinion.  Judge Diaz wrote the opinion, in which Judge Motz and Judge Thacker joined.

**ARGUED:**  Gabriel Kalman Gillett, JENNER & BLOCK LLP, Chicago, Illinois, for Movant.  Martine Elizabeth Cicconi, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Respondent.  **ON BRIEF:**  Ian Heath Gershengorn, JENNER & BLOCK LLP, Washington, D.C., for Movant.  Mark R. Herring, Attorney General, Victoria N. Pearson, Deputy Attorney General, Toby J. Heytens, Solicitor General, Matthew R. McGuire, Principal Deputy Solicitor General, Michelle S. Kallen, Deputy Solicitor General, Brittany M. Jones, John Marshall Fellow, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Respondent.

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Circuit Judge:

Donell Blount was convicted of armed robbery in 2001 by a Virginia state court. His conviction was affirmed on appeal, and the Virginia courts later rejected his post-conviction petition. Blount then sought (and was denied) federal habeas relief. Eleven years later, he filed another state post-conviction petition, which was again rejected. He now moves for authorization to file a successive federal habeas petition pursuant to 28 U.S.C. § 2244. For the following reasons, we deny the motion.

I.

A.

On May 25, 2000, Earl Thomas was robbed in his home in Portsmouth, Virginia.[1] The robber rushed inside, spun Thomas around, and pressed a gun to his back. For the next hour, Thomas was forced to turn over valuables, including his wallet, cash, a small radio, and a number of rings. The robber also had Thomas open his safe. All the while, the robber stayed behind Thomas with the gun pressed to his back, not allowing him to turn around. After tying Thomas up, the robber loaded the valuables (including the safe) into Thomas's vehicle and drove away. Shortly thereafter, Thomas broke free of the restraints and called the police. Thomas described the robber as short with a light complexion.

---

[1] We recount the facts as they appear in the record and Blount's motion. *See In re Williams*, 330 F.3d 277, 282 n.2 (4th Cir. 2003).

The next day, police officers stopped Thomas's stolen vehicle. The driver, Kelvin Satterwhite, told the officers that he had borrowed the vehicle from a man named Kevin and that he could take them to Kevin. Satterwhite took the officers to another location and pointed to a man standing outside. When an officer approached the man, he fled, dropping a handgun and a radio as he ran. The officers were unable to locate the man.

The officers seized Thomas's vehicle from Satterwhite and found Thomas's safe, along with other items taken from his home, in the trunk. They also found a work ID badge bearing the name Michael Spruill. Officers checked the vehicle for fingerprints and found both Satterwhite's and Blount's near the trunk. They found Blount's fingerprints on papers inside the safe.

An officer questioned Spruill, who told him that Blount had once robbed him at gunpoint and that he had filed a report about the incident. He also told the officer that Blount took his ID badge at that time. He denied robbing Thomas.

Two days after the robbery, Blount sold two of Thomas's rings at a pawn shop. Around that time, an officer present when Kevin fled from the police identified Blount as Kevin.

Both shortly after the robbery and in the lead-up to Blount's trial, Thomas was shown various photo lineups that included Satterwhite, Blount, and Spruill. On different occasions, Thomas identified both Blount and Spruill as the robber.

B.

At trial, Thomas testified that he had seen the robber's face for only a few seconds, but he described him as a light-skinned African American man. Thomas (who was 5′6″)

3

was certain that the robber was his height or shorter because he had heard the robber's voice from behind him at ear level. He told the jury that after "rolling this thing around in [his] head and in [his] mind for eight months and two days," he could identify Blount as the man who robbed him. J.A. 381. Thomas admitted that he hadn't identified Blount at a preliminary hearing and had mistakenly identified Spruill as the robber on another occasion.

Satterwhite was given immunity in exchange for his testimony. He testified that Blount had loaned him Thomas's car in exchange for drugs. Blount also offered to sell him items from the trunk, including a ring. Satterwhite identified Blount as the man whom he had called Kevin and who had fled from the police the day after the robbery.

Spruill was also given immunity. He testified that Blount, whom he had "dealt with . . . three or four times . . . in the street," had once robbed him at gunpoint. J.A. 704. He also testified that a few months after that, Blount approached him and asked to borrow his work ID badge. The record is muddled as to whether Blount asked politely or menacingly. Regardless, Spruill testified that Blount left with his ID badge.

Blount testified in his own defense. He explained that Spruill and Satterwhite had offered to sell him items out of the trunk of Thomas's car, and he went through the things in the safe at that time. Blount admitted that he had purchased rings from Spruill and Satterwhite and had taken them to a pawn shop. He denied ever having Spruill's ID badge. He also denied running from the police the day after the robbery, stating that he has a medical condition that prevents him from running.

4

In closing arguments, the Commonwealth highlighted Thomas's certainty regarding the robber's height—5′6″ or shorter.  It argued that neither Spruill nor Satterwhite, who are both taller than 5′6″, could be the robber.  Instead, only Blount, at 5′5″, fit Thomas's description.  The Commonwealth summarized the additional evidence against Blount— Thomas had identified Blount as the robber in a photo lineup, Satterwhite had testified that Blount had loaned him Thomas's vehicle, Blount's fingerprints were on the vehicle and on items in the safe, an officer had identified Blount as the man who fled from police after the robbery, Blount had taken Spruill's ID, and Blount had pawned some of Thomas's items.  The Commonwealth closed by reiterating that "[Thomas] told you he was positive about the size.  The size is so important in this case . . . ."  J.A. 894.

The jury convicted Blount, and he was sentenced to forty-eight years' imprisonment.

## C.

In 2006, after an unsuccessful direct appeal and state habeas petition, Blount filed a federal habeas petition.  The district court dismissed the petition, concluding that some claims were procedurally defaulted and others were without merit.  *See Blount v. Johnson*, No. 2:06CV132, 2006 WL 2076771 (E.D. Va. July 24, 2006) (unpublished) (magistrate judge's report and recommendation that was later adopted by the district judge).

In 2017, Blount filed a Freedom of Information Act request with the Portsmouth Police Department seeking police reports related to the robbery.  The police produced a number of documents, including an Incident Report Suspect List.  That report (which had not been turned over to Blount prior to trial) included the police's documentation of

5

Thomas's initial description of the robber. According to the report, the robber was a black male who was between 5′6″ and 5′8″, weighed 140 to 170 pounds, had a thin build and an angry and violent demeanor, and was a smoker. The report also contained a description of Blount's physical characteristics.

Blount then filed a new state habeas petition, arguing that the Commonwealth had violated his due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963), by suppressing the report. The state court denied Blount's petition, holding that even "assum[ing], *arguendo*, both that the allegedly withheld evidence would have been favorable to [Blount] . . . , and that the evidence in question was either willfully or inadvertently withheld," J.A. 64, the "veritable deluge of incriminating evidence" made it impossible to believe that the absence of the report "rendered the jury's verdict unworthy of confidence." J.A. 65. The Supreme Court of Virginia declined to hear Blount's appeal.

Blount now seeks authorization to file a second or successive federal habeas petition based on the allegedly suppressed police report.

II.

A.

Successive petitions for federal habeas corpus review may not be filed in a district court without permission from a court of appeals. 28 U.S.C. § 2244(b)(3)(A). A court of appeals may not grant permission unless the petition makes a prima facie showing that it satisfies the requirements of 28 U.S.C. § 2244(b)(2). *Id.* § 2244(b)(3)(C). To meet this burden, it must "appear[] reasonably likely that the motion satisfies the stringent

6

requirements for the filing of a second or successive petition." *In re Williams*, 330 F.3d at 281 (alteration adopted) (citation omitted). Put differently, the prima facie showing is "simply a sufficient showing of possible merit to warrant a fuller exploration by the district court." *Id.* (citation omitted).

In this case, Blount seeks to file a successive petition on a claim that arises from newly discovered facts. Such a claim must satisfy three requirements. *See id.* at 282. First, the claim must rely on a "factual predicate that could not have been discovered previously through the exercise of due diligence." *Id.* (alteration adopted) (quoting 28 U.S.C. § 2244(b)(2)(B)(i)). "Second, the claim must describe a constitutional error." *Id.* Third, the newly discovered facts, when viewed in conjunction with the evidence as a whole, must "be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." *Id.* (quoting 28 U.S.C. § 2244(b)(2)(B)(ii)).

We reiterate that Blount need only make a prima facie showing that the petition satisfies these requirements. *In re Hubbard*, 825 F.3d 225, 229 (4th Cir. 2016). While that analysis "may entail a cursory glance at the merits[,] . . . the focus of the inquiry must always remain on the § 2244(b)(2) standards." *In re Williams*, 330 F.3d at 282.

B.

Blount's motion is predicated on his 2017 discovery of the Incident Report Suspect List, wherein Thomas described the person who robbed him as, in relevant part, a black male who was between 5′6″ and 5′8″. He contends that the Commonwealth violated his due process rights under *Brady v. Maryland* by suppressing the report, which he would

7

have used to impeach Thomas's certainty regarding the robber's height, point to Spruill as an alternate perpetrator, and attack the police's failure to treat Spruill as a suspect.

Like the state court that first considered this claim, we turn directly to the required showing of prejudice. In assessing prejudice, the state court properly considered whether there was a reasonable probability that Blount would not have been convicted had the report been disclosed. *See Strickler v. Greene*, 527 U.S. 263, 296 (1999). Here, however, we focus on the higher showing necessary to satisfy § 2244(b)(2)'s prejudice prong— whether, viewing the evidence as a whole, there is clear and convincing evidence that no reasonable juror would have convicted Blount had the report been disclosed. *See In re Williams*, 330 F.3d at 282. We conclude that Blount has not made the necessary prima facie showing as to prejudice.

We do not think it reasonably likely that the relatively small discrepancy between Thomas's description of the robbery suspect in the report (5′6″ to 5′8″) and his testimony at trial (5′6″ or shorter) gives rise to clear and convincing evidence that no reasonable juror would have convicted Blount had the juror known of it. We consider this discrepancy in light of the evidence as a whole. As the Commonwealth highlighted for the jury, ample evidence unrelated to the robber's height supported Blount's conviction.[2] Specifically, Thomas identified Blount as the robber, Blount's fingerprints were on Thomas's vehicle and items inside the safe, Blount had either taken or borrowed Spruill's ID badge before

---

[2] That the Commonwealth at trial emphasized that Thomas was certain the robber was 5′6″ or shorter does not mean that we should ignore the other strong evidence in the record pointing to Blount's guilt. Indeed, § 2244(b)(2) requires that we consider it.

8

the robbery,[3] Blount pawned Thomas's stolen items, Satterwhite testified that Blount had loaned him Thomas's vehicle, and the police identified Blount as the man whom Satterwhite had identified and who fled from them after the robbery. Even if the jury had known about the relatively minor discrepancy regarding the robber's height, it does not follow that *no* reasonable juror would have convicted Blount.

Blount's contention that he would have used the report to point to Spruill as the robber and challenge the police's decision not to treat Spruill as a suspect is no more persuasive. At trial, Blount's counsel highlighted that Thomas had also identified Spruill as the robber. And counsel repeatedly questioned the police regarding their decision not to treat Spruill as a suspect. Specifically, counsel highlighted that the police failed to question Spruill about the shirt on which his badge was found in Thomas's trunk, waited six months to show Thomas a photo of Spruill, and mishandled the badge such that fingerprint evidence may have been destroyed. Nonetheless, the jury found Blount guilty. Accordingly, the evidence is far from clear and convincing that had Blount made the same arguments based on the report, no reasonable juror would have convicted him.

In sum, even accepting Blount's assertion that the report is impeaching and exculpatory, we do not think it reasonably likely that no reasonable juror knowing of the report would have convicted Blount. Simply put, the report does not "clearly and

---

[3] Although it's unclear from the record whether Blount took the ID when he robbed Spruill or he later asked Spruill for it, the Commonwealth's evidence was that Blount had the ID, not Spruill.

9

convincingly outweigh the . . . untainted evidence." *In re Williams*, 330 F.3d at 284.

Accordingly, the motion for authorization to file a successive habeas corpus petition is

*DENIED.*