**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-305**

In re: EMERSON EUGENE STEVENS,

Movant.

On Motion for Authorization to File a Second or Successive Petition for a Writ of Habeas Corpus, Under 28 U.S.C. § 2244.

Argued: January 29, 2020                                    Decided: April 15, 2020

Before FLOYD, THACKER, and RICHARDSON, Circuit Judges.

Motion granted by published opinion. Judge Richardson wrote the opinion, in which Judge Floyd and Judge Thacker joined. Judge Thacker wrote a separate concurring opinion.

**ARGUED:** Jennifer Leigh Givens, UNIVERSITY OF VIRGINIA SCHOOL OF LAW, Charlottesville, Virginia, for Movant. Matthew P. Dullaghan, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Respondent. **ON BRIEF:** Deirdre M. Enright, The Innocence Project, UNIVERSITY OF VIRGINIA SCHOOL OF LAW, Charlottesville, Virginia, for Movant. Mark R. Herring, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Respondent.

RICHARDSON, Circuit Judge:

Over three decades ago, a Virginia state court tried and convicted Emerson Eugene Stevens of first-degree murder and abduction with intent to defile. Stevens was paroled in 2017 but continues to challenge his convictions. Many years ago, we rejected Stevens's first federal habeas application. But he now seeks to file another federal habeas application attacking his convictions. According to Stevens, new evidence disclosed by the Commonwealth of Virginia in 2016 proves his innocence.

Before Stevens can file this successive habeas application, he must obtain authorization from this court. 28 U.S.C. § 2244(b)(3)(A). And we may authorize that application only if Stevens makes a prima facie showing that he satisfies § 2244(b)(2)'s threshold requirements. *Id.* § 2244(b)(3)(C). Because we conclude that Stevens has cleared this initial hurdle on the path to habeas relief, we authorize him to file his successive application in the district court.

## I.

On August 23, 1985, a twenty-four-year-old mother of two went missing in Lancaster County, Virginia. Four days later, police found her body in the Rappahannock River—strangled and weighed down with a cinderblock. Virginia police tied the murder to Stevens, a local crabber on that same river. A jury convicted Stevens of first-degree murder and abduction with intent to defile. The Court of Appeals of Virginia affirmed the jury's verdict, and the Supreme Court of Virginia declined to hear Stevens's appeal.

Having exhausted his options for a direct appeal, Stevens sought state habeas relief based on the prosecution's improper closing argument and failure to disclose exculpatory

2

evidence. The state court rejected this application. And the Virginia Court of Appeals denied Stevens's appeal as untimely.

Turning next to federal court, Stevens filed his first application for federal habeas relief. The district court denied his application, and a panel of the Fourth Circuit dismissed Stevens's appeal for having no merit. *Stevens v. Greene*, 991 F.2d 791 (4th Cir. 1993) (unpublished).

Over twenty years later in 2016, Stevens returned to state court and filed another application for state habeas relief. Only three days after filing, law enforcement authorities informed Stevens's counsel that they had newly discovered a "box of materials." This box, not previously disclosed, contains the evidence Stevens claims he has been requesting for decades. And this evidence, according to Stevens, shows his innocence and undermines his convictions. Based on these materials, Stevens amended his second state habeas application.

Not long after the Commonwealth found the box of materials, Stevens was granted parole. After he was released from prison, Stevens continued to seek habeas relief in state court.[1] And for a second time, the state court denied Stevens's application for habeas relief. Stevens's appeal of that denial was again rejected by the Supreme Court of Virginia.

---

[1] Although an applicant must be "in custody" to seek federal habeas relief, 28 U.S.C. § 2254(a), the Supreme Court determined that a parolee satisfies this requirement when "the custody and control" of a parole authority "involves significant restraints on a petitioner's liberty." *Jones v. Cunningham*, 371 U.S. 236, 242 (1963); *see also Wilson v. Flaherty*, 689 F.3d 332, 336 (4th Cir. 2012). As with other potential issues, we leave this question for the district court.

Stevens now comes to us, seeking authorization under 28 U.S.C. § 2244 to file a successive § 2254 application for federal habeas relief. In his proposed application, Stevens presents three claims:

1.    The Commonwealth of Virginia knowingly presented false testimony from Dr. John Boon about how the victim's body may have moved in the Rappahannock River, and the state suppressed evidence showing the testimony was false.

2.    The Commonwealth knowingly presented false testimony from Earl Smith that Stevens was late picking him up to pull crab pots the morning after the murder, and the state suppressed evidence showing the testimony was false.

3.    The Commonwealth withheld evidence that supports Stevens's innocence.

We ordered oral argument on the motion and now authorize Stevens's application.

**II.**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, defines federal courts' limited authority to review state court convictions. We may grant a writ of habeas corpus and release a prisoner from state custody only in exceptional circumstances. *See* 28 U.S.C. § 2254; *Richardson v. Branker*, 668 F.3d 128, 138 (4th Cir. 2012).

This authority entitles every state prisoner to one federal habeas challenge. 28 U.S.C. § 2254(a). But not more than one. For any successive federal habeas application, AEDPA requires a prisoner to meet strict procedural and substantive gate-keeping requirements before federal courts can reach the merits of that successive application. *Panetti v. Quarterman*, 551 U.S. 930, 942–47 (2007).

4

The first gate-keeping provision for successive applications is § 2244(b)(3)'s pre-filing authorization requirement: A successive applicant must "move in the appropriate court of appeals for an order authorizing the district court to consider the application." 28 U.S.C. § 2244(b)(3)(A); *see United States v. Winestock*, 340 F.3d 200, 205 (4th Cir. 2003). The court of appeals may grant this authorization only if the applicant has made a prima facie showing that his claim (1) was not presented in a prior federal habeas application and (2) falls within one of the two narrow paths set forth in § 2244(b)(2) to challenge his conviction. 28 U.S.C. §§ 2244(b)(2), (b)(3).

The first path, provided in § 2244(b)(2)(A), requires that a claim rely on a new and retroactive constitutional rule that was previously unavailable. The second path, set forth in § 2244(b)(2)(B), demands that "(i) the factual predicate of the claim could not have been discovered previously through the exercise of due diligence; and (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."

Stevens chose the second path. To obtain authorization, Stevens relies on new factual predicates to satisfy § 2244(b)(2)(B). At this stage, he need not convince us that he will ultimately satisfy this provision's strict dictates. All he must do is make a prima facie

showing that he can do so. *See In re Hubbard*, 825 F.3d 225, 229, 231 (4th Cir. 2016); *In re Williams*, 330 F.3d 277, 281–82 (4th Cir. 2003).[2]

To make this prima facie showing, Stevens relies on the "box of materials" first disclosed to him in October 2016. He contends that he could not have discovered the evidence in the box through the exercise of due diligence. And he contends that this evidence provides the factual predicate for the three claims he now seeks to raise. First, Stevens argues that new evidence in an undisclosed FBI report shows that the Commonwealth presented false testimony from Dr. Boone about how the victim's body may have moved in the Rappahannock River, *see Napue v. Illinois*, 360 U.S. 264 (1959), and that it suppressed the exculpatory FBI evidence that undermines that testimony, *see Brady v. Maryland*, 373 U.S. 83 (1963). Second, Stevens argues that new police records addressing Earl Smith's statements reveal that the Commonwealth presented false testimony from Smith about Stevens's routine the morning after the murder, *see Napue*, 360 U.S. 264, and that it suppressed the exculpatory information from Smith that undermines that testimony as well, *see Brady*, 373 U.S. 83. And third, Stevens alleges that the Commonwealth suppressed at least seven pieces of exculpatory evidence found in the "box of materials." *See id.*

---

[2] Clearing this threshold is only Stevens's first step on a narrow path to relief. Before the district court may review the merits of a successive application, it must determine that the applicant actually "satisfies the requirements of" § 2244(b). 28 U.S.C. § 2244(b)(4); *see also Winestock*, 340 F.3d at 205 ("When the application is thereafter submitted to the district court, that court must examine each claim and dismiss those that are barred under § 2244(b) or § 2255.").

Based on the record and arguments before us, we hold that Stevens has made a prima facie showing that his application satisfies § 2244(b)(2)(B)'s requirements. We therefore grant him authorization to file a successive habeas application in the district court. At this stage in the proceedings, we may not plod along any further. *See In re Williams*, 330 F.3d 277, 281−82 (4th Cir. 2003); *cf. Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003) (noting that the threshold decision to grant a certificate of appealability under 28 U.S.C. § 2253(c) forbids full consideration of the factual or legal bases adduced in support of the claims).

*     *     *

In AEDPA, Congress enacted rigorous substantive and procedural limitations that prevent the federal courts from unduly disrupting state convictions. And for successive habeas applications, Congress erected even higher hurdles. We have often explained that these limits ensure the proper "respect due to state courts in our federal system." *Miller-El*, 537 U.S. at 340.

But AEDPA also highlights the central role of the state executive. By limiting the power of the federal courts, AEDPA shifts the focus to those actors who possess the ultimate discretion to prosecute, pardon, and preserve convictions. And, consistent with this great power, we expect executive actors to wield their authority in a manner consistent with our finest values and traditions. *See* Robert H. Jackson, *The Federal Prosecutor*, Address at the Second Annual Conference of United States Attorneys (Apr. 1, 1940); *Merritt v. Commonwealth*, 820 S.E.2d 379, 383 n.6 (Va. Ct. App. 2018) (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)).

Although we often think of that responsibility in connection with an active prosecution, it applies with just as much force when addressing contested convictions. Since the beginning of our Republic, "in most, if not all, of the states, the executives have by their respective *constitutions*, the right of pardoning." V DEBATES ON THE ADOPTION OF THE FEDERAL CONSTITUTION 208 (J. Elliot ed., 2d ed., 1881) (remarks of Madison, June 19, 1787). Concentrating post-conviction powers in the executive reflects the hope that "the sense of responsibility is always strongest, in proportion as it is undivided." THE FEDERALIST No. 74, at 446 (Hamilton) (C. Rossiter ed., 1961); *id.* ("[t]he reflection that the fate of a fellow-creature depended on [the executive's] *sole fiat*, would naturally inspire scrupulousness and caution"). And so, the executive's power and responsibility both before and after conviction remain fundamental in our system of divided powers.

Still, AEDPA does create a limited role for us to review state convictions. And, at this stage, we find that Stevens has made the prima facie showing required to clear AEDPA's first hurdle. So we authorize him to file his successive habeas application in the district court. What happens next is for the district court—and the state executive—to determine.

*MOTION GRANTED*

8

THACKER, Circuit Judge, concurring:

Though I concur in the majority opinion, I write separately to explain in more detail why, in my view, Emerson Stevens satisfies the prima facie standard set forth in 28 U.S.C. § 2244 to obtain authorization to file his successive § 2254 application.

As the majority explains, Stevens makes three claims based on newly discovered evidence:

1.  The [prosecution] knowingly presented false testimony from Dr. John Boon about how the victim's body may have moved in the Rappahannock River, and the state suppressed evidence showing the testimony was false.

2.  The [prosecution] knowingly presented false testimony from Earl Smith that Stevens was late picking him up to pull crab pots the morning after the murder, and the state suppressed evidence showing the testimony was false.

3.  The [prosecution] withheld evidence that supports Stevens's innocence.

Maj. Op. at 4.

Though Stevens will ultimately have to satisfy all of the requirements in § 2244 and § 2254 in order to succeed on his successive habeas, our review for purposes of granting authorization only requires Stevens to make a prima facie showing of the "three essential components" of § 2244(b)(2)(B).

> First, the claim must rely on a 'factual predicate [that] could not have been discovered previously through the exercise of due diligence.' 28 U.S.C.A. § 2244(b)(2)(B)(i). Second, the claim must describe constitutional error. *See id.* § 2244(b)(2)(B)(ii). Third, the newly discovered facts upon which the claim is based, when viewed in conjunction with 'the

9

evidence as a whole,'[1] must 'be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.' *Id.*

*In re Williams*, 330 F.3d 277, 282 (4th Cir. 2003) (alteration in original).

I agree entirely with the majority view that Stevens has made a prima facie showing that the contents of the October 2016 box of documents, which form the basis of his three claims, were not previously available to him. However, given the facts of this case, I find it important to fully address the second and third requirements -- constitutional error and establishing that, in light of the "evidence as a whole," no reasonable factfinder would have found Stevens guilty.

## I.

## A.

In his first claim of constitutional error, Stevens argues the prosecution knowingly presented false testimony from Dr. John Boon about how the victim's body may have moved in the Rappahannock River. Dr. John Boon, a marine scientist, testified for the prosecution that it was possible for a weighed down body to travel ten miles upstream in four days in the Rappahannock River system. Though Dr. Boon did not testify that this was possible on the specific days in question, his testimony was essential to the

---

[1] As we explained in *In re Williams*, "[a]lthough § 2244(b)(2)(B)(ii) requires us to consider 'the evidence as a whole,' we will rarely have the full trial record before us. . . . In most cases, therefore, we will be constrained to rely on the description of the trial record provided by the [authorization] motion." 330 F.3d at 282 n.2 (citing *In re Boshears,* 110 F.3d 1538, 1541 & n. 1 (11th Cir. 1997) (stating that factual allegations in the authorization motion should be accepted as true unless "conclusively foreclose[d]" by the record)).

prosecution's theory of the case because on the morning the victim's body must have been put into the water, Stevens's boat had been seen docked ten miles downstream from where the body was ultimately found.

Critically, when Stevens discovered the FBI report in the October 2016 box of materials, he learned that the FBI had considered how far it was possible for the body to have traveled on the relevant dates. The FBI Report concluded that on those days, "[b]ecause of the tidal action and currents. . . it is currently estimated that the body . . . was dumped within 500 to 600 yards of where it was eventually located." J.A. 260. This conclusion is at odds with the testimony of Dr. Boon.

The Supreme Court has held "knowingly us[ing] false evidence, including false testimony, to obtain a tainted conviction" is a due process violation. *Naupe v. People of State of Ill.*, 360 U.S. 264, 269 (1959); see also *United States v. Basham*, 789 F.3d 358, 376 (4th Cir. 2015) ("[T]he Due Process Clause obliges the government not [to] use false evidence, including false testimony." (internal quotation marks omitted)). And we have held "[e]vidence may be false either because it is perjured, or, though not itself factually inaccurate, because it creates a false impression of facts which are known not to be true." *Hamric v. Bailey*, 386 F.2d 390, 394 (4th Cir. 1967). Here, Stevens asserts that Dr. Boon's testimony, though perhaps accurate on a macro level, was used by the prosecution to create the false impression that the victim's body could have traveled ten miles upstream on the four days in question. And, because the FBI report had been turned over in full to the Virginia State Police, the prosecution was responsible for being aware of its contents. In

11

my view, these allegations are more than sufficient to make a prima facie showing of constitutional error.

B.

Stevens's second claim is that the prosecution knowingly presented false testimony from Earl Smith. Smith was working with Stevens the week the victim disappeared and testified that Stevens always picked him up for work around 6:00 a.m. However, Smith testified that on the morning after the victim went missing, Stevens was an hour late. The prosecution theorized that Stevens was late because he was disposing of the victim's body in the Rappahannock River. But on cross examination, Smith admitted that he could be mistaken about which day Stevens was late. In fact, Stevens presented evidence that he had been late a different morning that week because he had a doctor's appointment.

Though Smith's testimony was impeached, the prosecution relied heavily on his direct testimony during its closing argument, suggesting that Stevens was late because he was disposing of the victim's body. Yet again, based on evidence found in the October 2016 box, Stevens now claims the prosecution knew Smith's initial testimony was false, failed to correct it, and used it to "create[] a false impression of facts which are known not to be true." *See Hamric*, 386 F.2d at 394. Specifically, the FBI report, which was included in the October 2016 box, contains the investigation notes of the lead detective, Virginia State Police Special Agent David Riley, when he interviewed Smith in September 1985. Detective Riley reported then that Smith stated Stevens "picked him up the next morning (Friday, 8/23/85) to go crabbing at the usual time of 5:30 - 6:00 a.m." J.A. 281.

12

Because it is a constitutional violation to allow false testimony to go uncorrected, *Naupe*, 360 U.S. at 269, and to knowingly use the testimony to create a false impression of a material fact, *Hamric*, 386 F.2d at 394, Stevens's claims create at least a prima facie showing of constitutional error here as well.

C.

Finally, Stevens's third claim is that the prosecution committed numerous violations of *Brady v. Maryland*, 373 U.S. 83 (1963), by withholding exculpatory evidence. Based on the FBI report and other documents contained in the October 2016 box, Stevens claims there are at least seven instances of facts that are exculpatory because they identify other viable suspects, would have provided impeachment evidence, and/or provided alternative theories that undermine the Commonwealth's theory. None of these materials were disclosed to Stevens prior to the disclosure of the October 2016 box.

Pursuant to *Brady*, "the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment." 373 U.S. at 87. *Brady* extends to impeachment evidence, *United States v. Bagley*, 473 U.S. 667, 676 (1985), and to the failure to disclose favorable evidence that is only known to the police, *see Kyles v. Whitley*, 514 U.S. 419, 437–38 (1995).

Evidence is material if it would reasonably "put the whole case in such a different light as to undermine confidence in the verdict," *id.* at 435, and materiality must be assessed collectively, *see id.* at 436 n.10. The exculpatory facts Stevens identifies are both favorable to him and may be used collectively to undermine confidence in the verdict. Though the district court will need to determine if the effect of these facts is significant enough, at this

13

stage Stevens has made a prima facie showing that his claim describes a constitutional violation.

## II.

Pursuant to 28 U.S.C. § 2244(b)(2)(B)(ii), the third "essential component" of Stevens's claim is a prima facie showing that "the newly discovered facts . . . when viewed in conjunction with 'the evidence as a whole,'" are "sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." *In re Williams*, 330 F.3d 277, 282 (4th Cir. 2003).

The evidence as a whole is important here because it is "all the evidence put before the court at the time of its § 2244(b)(2)(B)(ii) . . . evaluation." *United States v. MacDonald*, 641 F.3d 596, 610 (4th Cir. 2011). The Court must make "its § 2244(b)(2)(B)(ii) . . . determination—unbounded 'by the rules of admissibility that would govern at trial'— based on 'all the evidence, including that alleged to have been illegally admitted [and that] tenably claimed to have been wrongly excluded or to have become available only after the trial.'" *Id.* at 612 (alteration in original) (quoting *Schlup v. Delo*, 513 U.S. 298, 327–28 (1995)). In other words, "the court must consider all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under [evidentiary rules]." *Id.* (internal quotation marks omitted) (alteration in original).

14

Thus, the 'evidence as a whole' includes all new developments in Stevens's case, regardless of whether those developments are part of his § 2254 claims.

From my vantage point, the evidence as a whole overwhelmingly supports a conclusion that no reasonable jury would have convicted Stevens. In addition to the new facts discussed above, there have been developments in several other key respects.

First, when the victim's body was discovered, there were several wounds on her back. A local Medical Examiner ("ME") initially determined the cause of death was asphyxiation and that the wounds were caused by the body scraping material in the water after death. The Chief ME initially signed off on these conclusions. But, curiously, after speaking with law enforcement about the case, the Chief ME changed course and determined that the wounds were caused by a cutting instrument. *See id.* The Chief ME then added "cutting wounds" as a second cause of death.

Then, during the trial, the prosecution presented a theory that the wounds could have been caused by a Wildcat Skinner knife. A crime scene technician testified that he had found a knife sheath in Stevens's truck that was of the type that could have contained a Wildcat Skinner. Interestingly, however, this sheath was not collected as evidence or presented at trial. The Chief ME testified that a Wildcat Skinner could have caused the wounds, and a friend of Stevens's testified that Stevens owned a similar knife. Significantly, however, the Chief ME has since reviewed her own findings and has admitted in a sworn affidavit that the wounds are not consistent with knife or cutting wounds but are instead consistent with a "post-mortem encounter with a boat propeller." J.A. 230–32.

Next, the prosecution presented only one piece of physical evidence at trial to connect Stevens to the murder -- a single hair found on Stevens's jacket. The hair was compared to the victim's hair using microscopic hair comparison analysis, and an expert for the prosecution testified that the two were microscopically alike in all identifiable characteristics. But microscopic hair comparison analysis is now considered *scientifically invalid and unreliable*. Virginia recognized this in 2012 when it granted an order to retest the hair in evidence using modern science. However, the hair was too old to be retested.

Finally, Clyde Dunaway, a witness who testified against Stevens and placed his truck in the vicinity of the victim's house, has since pled guilty to obstruction of justice *for providing false testimony during the trial*. Specifically, during his testimony Dunaway denied having asked the prosecution about potential reward money for supplying information in the case. In fact, Dunaway had inquired about reward money on numerous occasions.

Based on each of these new developments -- combined with the new facts Stevens discovered in the October 2016 box -- I simply cannot see how any reasonable factfinder could convict in this case. There is now no reliable physical evidence, the prosecution's theory that Stevens's knife caused the back wounds is no longer viable, the jury could seriously question at least one prosecution witnesses credibility based on his false testimony, and the FBI report at least makes the prosecution's theory that the body traveled ten miles much more difficult to believe.

At a minimum, Stevens has made a prima facie showing that, based on the evidence as a whole, no reasonable jury would have convicted him of this crime.

## III.

Though I would go farther than the majority by way of explanation, I concur for all of the foregoing reasons.