*PUBLISHED*

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

No. 16-601

In re:  JAMES ALLEN IRBY, III,

      Movant.

On Motion for Authorization to File Successive § 2255 Motion in the United States District Court for the District of Maryland, at Greenbelt.   Deborah K. Chasanow, Senior District Judge.  (8:03-cr-00490-DKC-1)

Argued:  September 22, 2016                      Decided:  June 1, 2017

Before NIEMEYER, SHEDD, and AGEE, Circuit Judges.

Motion for authorization denied by published opinion.  Judge Shedd wrote the opinion, in which Judge Niemeyer and Judge Agee joined.

**ARGUED:** Paresh S. Patel, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greenbelt, Maryland, for Movant.  Sujit Raman, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Respondent. **ON BRIEF:** James Wyda, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Baltimore, Maryland, for Movant.  Rod J. Rosenstein, United States Attorney, Baltimore, Maryland, Brian Epshteyn, Student Law Clerk, John Perry, Student Law Clerk, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Respondent.

SHEDD, Circuit Judge:

A jury convicted James Allen Irby of second-degree murder in retaliation against a witness or informant, in violation of 18 U.S.C. §§ 1513(a)(1)(B) and 1111(a); causing death with a firearm, in violation of 18 U.S.C. §§ 924(c) and (j); and destruction of property by fire, in violation of 18 U.S.C. § 844(i). Irby did not appeal his convictions, and his initial 28 U.S.C. § 2255 motion was denied. Irby now moves for authorization to file a successive § 2255 motion, arguing that under *Johnson v. United States*, 135 S.Ct. 2551 (2015), he should be allowed to challenge his § 924(c) conviction. Because *Johnson* does not aid Irby, we deny his motion.

I.

The underlying facts are not in dispute. In early January 2001, Terrence Deadwyler began cooperating with federal authorities in an effort to avoid a lengthy prison sentence from an ongoing drug trafficking case. As part of this cooperation, Deadwyler, through his attorney Tony Miles, informed agents with the Bureau of Alcohol, Tobacco, and Firearms (ATF) that an associate, Irby, possessed a gun in his apartment. ATF agents confirmed that Irby lived in the specified apartment, did not have a permit for a gun, and was a convicted felon. Several days later, the ATF executed a warrant at Irby's apartment and recovered a gun.

Irby, who was incarcerated and awaiting trial in D.C. Superior Court at the time, remained in custody pending a federal felon-in-possession charge. Irby was represented in the federal case by Deadwyler's attorney, Tony Miles. On Irby's behalf, Miles filed a request for disclosure of the informant. At that point, Miles discovered that Deadwyler

2

was the informant and moved to recuse himself from Irby's case. At the same time, the federal prosecutors determined that revealing Deadwyler as the informant in Irby's case would harm other ongoing investigations and dismissed the case against Irby.

During his detention on the felon-in-possession charge, Irby's father passed away. Because Irby believed that the search warrant executed at the apartment he shared with his father caused his father's health to fail, he blamed the informant for his father's passing and turned his attention to uncovering the informant's identity. In March 2003, Irby and Deadwyler were together when Deadwyler took a call from his attorney. At the end of the call, Irby asked who Deadwyler's attorney was, and Deadwyler told him it was Miles. This revelation left Irby convinced that Deadwyler was the informant against him.

Around 1:00 a.m. on the morning of March 28, 2003, Irby entered Deadwyler's apartment and shot him three times — under the left eye, through the neck, and in the flank — with two shots coming from close range. Irby next proceeded to stab Deadwyler 174 times. He then retrieved Deadwyler's valuables and clothes, put them in a pile, and lit them on fire. The fire caused the evacuation of Deadwyler's apartment complex and significant property damage.

Irby later confided in his cousin that he was certain that Deadwyler was the informant and that Deadwyler had taken his father from him. Irby told his cousin Deadwyler's murder did not bother him because he "had put in work before." (J.A. 268). He also joked that he had set fire to Deadwyler's "cheap ass clothes" and explained that he stabbed Deadwyler after shooting him to "make sure it was over." (J.A. 268).

3

A federal grand jury indicted Irby on three charges: first-degree retaliatory murder (Count 1); causing death with a firearm (Count 2); and destruction of property by fire. Following a trial, the jury convicted Irby of Counts 2 and 3. On Count 1, the jury found Irby guilty of the lesser-included offense of second-degree retaliatory murder. The district court sentenced Irby to 38 years imprisonment. As previously mentioned, Irby's first § 2255 motion was denied. On May 7, 2016, Irby moved for authorization to file a successive § 2255 motion.

## II.

## A.

To qualify for authorization to file a successive § 2255 motion, Irby must show, *inter alia*, that his motion relies on a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court." 28 U.S.C. § 2255(h)(2). We recently explained that § 2255(h) requires a claimant like Irby to make two showings. *See In re Hubbard*, 825 F.3d 225, 229 (4th Cir. 2016). First, Irby must show that his claim relies on a new and retroactive rule of constitutional law. Second, Irby must make "a sufficient showing of possible merit to warrant a fuller exploration by the district court." *Id.* (internal quotation marks omitted). Under this standard, Irby must make a "plausible" claim for relief, *id.* at 230, because "[m]ere citation of a new rule in a successive motion is not sufficient," *Donnell v. United States*, 826 F.3d 1014, 1016 (8th Cir. 2016).

To satisfy *Hubbard's* requirements, Irby points to *Johnson*. In *Johnson*, the Supreme Court ruled that the residual clause of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(ii), is unconstitutionally vague. *Johnson's* holding was made retroactive by

4

*Welch v. United States*, 136 S.Ct. 1257 (2016). Assuming that *Johnson* would apply to § 924(c), we deny Irby authorization to file a successive § 2255 motion because he does not make a plausible claim for relief.

B.

Section 924(c) is a penalty provision that mandates an enhanced sentence for a defendant who uses or carries a firearm during, as relevant here, a "crime of violence." 18 U.S.C. § 924(c)(1)(A). A "crime of violence" is defined as a felony offense that:

> (A) Has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) That by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

*Id.* § 924(c)(3). Subsection A is commonly called the force clause and subsection B the residual clause. "In determining whether an offense is a crime of violence under either clause, we utilize the categorical approach, which focuses solely on the elements of the offense, rather than on the facts of the case." *United States v. McNeal*, 818 F.3d 141, 152 (4th Cir. 2016). *See also United States v. Evans*, 848 F.3d 242, 245-46 (4th Cir. 2017) ("[W]e apply the elements-based categorical approach" to §924(c) and "analyze only the elements of the offense in question, rather than the specific means by which the defendant committed the crime").

We briefly note the categorical approach is a particularly bad fit in § 924(c) cases because § 924(c) is a firearms enhancement provision that penalizes, in broad terms, the use of a firearm during violent crimes. While Irby posits multiple hypotheticals on how a

5

person can commit second-degree retaliatory murder without using direct force, "[o]ne is left to ask when, if ever, would someone be facing a firearms enhancement . . . by pointing a laser at an airplane" or convincing a child to jump out of a second-story window. *United States v. Checora*, 155 F.Supp.3d 1192, 1200 (D. Utah 2015).

In this case, the absurdity of Irby's position is magnified because Irby was also convicted of violating § 924(j), which makes it a crime to "cause[] the death of a person through the use of a firearm" in the course of committing a § 924(c) offense. 18 U.S.C. § 924(j). The jury was instructed that it could convict Irby only if the Government "prove[d] that the defendant inflicted an injury or injuries upon Terrence Deadwyler using a firearm from which Terrence Deadwyler died," (J.A. 52), an action that indisputably required the "use of force," yet the categorical approach requires us to ignore this fact in reviewing whether second-degree retaliatory murder is a crime of violence, continuing the "protracted ruse for paradoxically finding even the worst and most violent offenses not to constitute crimes of violence." *United States v. Doctor*, 842 F.3d 306, 313 (4th Cir. 2016) (Wilkinson, J. concurring).

Our precedent requires application of that approach, however, and accordingly, we must address whether Irby's second-degree retaliatory murder conviction is categorically a crime of violence under the force clause.

C.

Section 1513, the retaliatory murder statute, makes it an offense to intentionally kill another person in retaliation for, inter alia, providing a law enforcement officer with "any information" regarding "the commission" of a "Federal offense." 18 U.S.C. §

6

1513(a)(1)(B). The punishment for retaliatory murder is specified in 18 U.S.C. § 1111, the federal murder statute, which defines murder as "the unlawful killing of a human being with malice aforethought." Section 1111(a) explains that:

> Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, escape, murder, kidnapping, treason, espionage, sabotage, aggravated sexual abuse or sexual abuse, child abuse, burglary, or robbery; or perpetrated as part of a pattern or practice of assault or torture against a child or children; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, is murder in the first degree.

*Id.* "Any other murder is murder in the second degree." *Id.* The statute authorizes "death or by imprisonment for life" for first-degree murder and "any term of years or for life" for second-degree murder. *Id.* § 1111(b).

D.

Applying the categorical approach, we conclude that Irby cannot meet *Hubbard's* second requirement. As we explain, *Johnson* does not help Irby: his conviction for second-degree retaliatory murder is a crime of violence under § 924(c)'s force clause because it "[h]as an element the use, attempted use, or threatened use of physical force against the person." *See Hubbard*, 825 F.3d at 229 (denying Hubbard's motion for authorization as to his § 924(c) conviction because armed bank robbery "is a crime of violence, specifically under the 'force clause' of 18 U.S.C. § 924(c)(3), and . . . the holding in *Johnson* is inapplicable").

In *Curtis Johnson v. United States*, 559 U.S. 133 (2010) (*Curtis Johnson*), the Court examined the definition of "physical force" under the ACCA, 18 U.S.C. § 924(e)(2)(B)(i).

7

The Court first noted that the term "physical" was "not of much help" because it simply "refers to force exerted by and through concrete bodies—distinguishing physical force from, for example, intellectual force or emotional force." *Id.* at 138. "Force," however, held multiple possible meanings including as an element of common law battery. At common law, the Court explained, "force" was "satisfied by even the slightest offensive touching." *Id.* at 139. This definition, however, did not fit with § 924(e)'s reference to violent felonies. Instead, the Court held that the "force" as used in § 924(e)(2)(B)(i)[1] must be "violent," "great," or "strong," that is, force "capable of causing physical pain or injury to another person." *Id.* at 140.

More recently, the Court has expounded upon what it means to *use* physical force. In *United States v. Castleman*, 134 S.Ct. 1405, 1409 (2014), the defendant was previously convicted of "intentionally or knowingly causing bodily injury to" his child's mother. The Court was tasked with answering whether this conviction amounted to a misdemeanor crime of domestic violence, that is, a crime that "has as an element the use . . . of physical force." *Id.* (quoting 18 U.S.C. § 921(a)(33)(A)(ii)). The district court had determined that the conviction did not qualify because "one can cause bodily injury without 'violent contact'—for example, by 'deceiving [the victim] into drinking a poisoned beverage.'" *Id.* (quoting App. To Pet. For Cert. 41a).

---

[1] That statute defines a violent felony as one that "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i).

The Court first determined that, unlike in *Curtis Johnson*, the reference to "force" in § 921(a)(33)(A) did incorporate "the common-law meaning of 'force'—namely, offensive touching." *Id.* at 1410. The Court then turned to whether the causation of bodily injury necessarily required the use of force. The court held that "bodily injury must result from physical force." *Id.* at 1414 (internal quotation marks omitted).

In so holding, the Court rejected the district court's position that a defendant could cause injury by indirect means, like poison, that did not require any force. As the Court reiterated, physical force "is simply 'force exerted by and through concrete bodies,'" and common-law force "encompasses even its indirect application." *Id.* (quoting *Curtis Johnson*, 559 U.S. at 138). "It is impossible to cause bodily injury without applying force in the common-law sense." *Id.* at 1415. The Court then emphatically rejected Castleman's argument that "no one would say that a poisoner employs force," because "the knowing or intentional application of force is a use of force." *Id.* (internal quotation marks omitted). As the Court succinctly explained:

> The "use of force" in Castleman's example is not the act of "sprinkl[ing]" the poison; it is the act of employing poison knowingly as a device to cause physical harm. That the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter. Under Castleman's logic, after all, one could say that pulling the trigger on a gun is not a "use of force" because it is the bullet, not the trigger, that actually strikes the victim.

*Id.*[2]

---

[2] Justice O'Connor, writing for the Eleventh Circuit, made a similar point in rejecting an argument that disabling an aircraft does not require the use of force against property:

*Curtis Johnson* and *Castleman* make it pellucid that second-degree retaliatory murder is a crime of violence under the force clause because unlawfully killing another human being requires the use of force "capable of causing physical pain or injury to another person." *See United States v. Luskin*, 926 F.2d 372, 379 (4th Cir. 1991) (traveling interstate to commit murder was crime of violence under force clause because it "certainly threatened the use of violence"); *United States v. Mathis*, 963 F.2d 399, 407 (D.C. Cir. 1992) (noting § 924(c) force clause offenses are those that have as "an element the use, attempted use or threatened use of physical force against a person. This . . . would include such felonies involving physical force against a person such as murder, rape, assault, robbery, etc.") (quoting H.R. Rep. No. 849, 99th Cong., 2d Sess. 3); *United States v. Machado-Erazo*, 986 F.Supp.2d 39, 53-54 (D.D.C. 2013) (rejecting motion for acquittal on § 924(c) charge because murder "is a crime of violence because it is a felony that requires the use, attempted use, or threatened use of physical force against another person"). In fact, the *Curtis Johnson* Court made this point when it quoted approvingly a definition of a violent felony as "[a] crime characterized by extreme physical force, such as murder, forcible rape, and assault

---

It makes little difference that the physical act, in isolation from the crime, can be done with a minimum of force; we would not say that laying spikes across a roadway is a non-violent crime because laying something upon the ground is not a forceful act. It still involves an intentional act against another's property that is calculated to cause damage and that is exacerbated by indifference to others' wellbeing.

*United States v. McGuire*, 706 F.3d 1333, 1337-38 (11th Cir. 2013).

10

and battery with a dangerous weapon." *Curtis Johnson*, 559 U.S. at 140-41 (quoting *Black's Law Dictionary*, 1188 (9th ed. 2009)).[3]

Irby posits multiple hypothetical means for committing second-degree murder without applying direct force (for instance, convincing a person to expose themselves to hazardous chemicals), but *Castleman* forecloses the argument that indirect means of applying force are not a use of force. In Irby's hypothetical, it is enough that the individual intentionally acted to place the victim in the path of an inevitable force. Just as with the poisoner, "it is the act of employing [chemicals] knowingly as a device to cause physical harm" that qualifies as the use of force. *Castleman*, 134 S.Ct. at 1415. Simply, "[i]t is hard to imagine conduct that can cause another to die that does not involve physical force against the body of the person killed". *Checora*, 155 F.Supp.3d at 1197. [4]

Moreover, the Supreme Court also commands that, in interpreting statutes, we are instructed to use not only "the statutory context, structure, history, and purpose," but also our "common sense" to avoid an absurd result. *Abramski v. United States*, 134 S.Ct. 2259,

---

[3] Even post-*Johnson* several courts have found that murder is a crime of violence under the force clause. *See*, *e.g.*, *United States v. Moreno-Aguilar*, 198 F.Supp.3d 548, 551 (D. Md. 2016) (concluding murder is a crime of violence under § 924(c) force clause and noting court "has not found any decision holding that murder *cannot* serve as a predicate offense under the force clause") (emphasis in original); *Cousins v. United States*, 198 F.Supp.3d 621, 626 (E.D.Va. 2016) (common law murder is a crime of violence under § 924(c) force clause); *Checora*, 155 F.Supp.3d at 1195-1201 (second-degree murder under § 1111 is a crime of violence under § 924(c) force clause).

[4] The Supreme Court's lethal injection protocol cases recognize that the "risk of pain is inherent in any method of execution—no matter how humane." *Baze v. Rees*, 553 U.S. 35, 47 (2009) (plurality opinion). Thus, even "humane" executions are "capable of causing physical pain or injury" as required by *Curtis Johnson*.

2267 (2014) (internal quotation marks omitted). Common sense dictates that murder is categorically a crime of violence under the force clause. *See United States v. Hill*, 832 F.3d 135, 140 (2d Cir. 2016) (noting categorical approach must remain "grounded in reality, logic, and precedent, not flights of fancy"). It is absurd to believe that Congress would have intended poisoners and people who use their wits to place someone in the path of an inevitable force to avoid the force clause of § 924(c). Irby contends that any absurdity is mitigated because murder could fit under the residual clause, but that clause was added by Congress to cover various state law crimes that were "roughly similar" to the examples provided in the clause: burglary, arson, extortion, and crimes involving the use of explosives. Begay v. United States, 553 U.S. 137, 143 (2008). It was not added to catch a quintessential crime of violence such as murder, a crime the Court has stated repeatedly has no comparison "in terms of moral depravity and of the injury to the person" given its "severity and irrevocability." *Kennedy v. Louisiana*, 554 U.S. 407, 438 (2008) (internal quotation marks omitted). *See also Graham v. Florida*, 560 U.S. 48, 69 (2010) (noting other crimes "differ from homicide crimes in a moral sense").

Under Irby's approach, the most morally repugnant crime — murder — would not be a crime of violence "while at the same time permitting many less-serious crimes to be so classified." *United States v. Alfaro*, 835 F.3d 470, 477-78 (4th Cir. 2016). For instance, we have recently reaffirmed that armed bank robbery, which criminalizes the taking of certain property by "force and violence, or by intimidation," is a crime of violence under § 924(c)'s force clause. *McNeal*, 818 F.3d at 152-54. Thus, just as mentioned in *Alfaro*, Irby's approach leaves us with a more serious offense (murder) outside the force clause

12

while permitting less-serious offenses (robbery) to remain under the clause. We rejected that "illogical result" in *Alfaro* and reject it again here.[5] *Alfaro*, 835 F.3d at 478.

E.

In a final effort to save his motion for authorization, Irby points to *United States v. Torres-Miguel*, 701 F.3d 165 (4th Cir. 2012) which, in his view, indicates that second-degree retaliatory murder does not require the *use* of physical force. We disagree.

In *Torres-Miguel*, we examined a prior state conviction for "threaten[ing] to commit a crime which will result in death or great bodily injury to another." *Id.* at 167 (quoting Cal. Penal Code § 422(a)) (emphasis omitted). We held that such a conviction did not have "as an element the use, attempted use, or threatened use of physical force against the person of another," as required by § 2L1.2 of the United States Sentencing Guidelines. In reaching this conclusion, we explained that "[a]n offense that results in physical injury, but does not involve the use or threatened use of force, simply does not meet the Guidelines definition," and that the California statute thus failed to fall within the Guidelines definition because "a crime may *result* in death or serious injury without involving *use* of physical force." *Id.*

---

[5] Irby's position also would lead to anomalous results in other statutes. For instance, Congress enacted the federal solicitation statute, 18 U.S.C. § 373, at the same time it enacted § 924(c)'s force and residual clauses. The solicitation statute makes it a crime to solicit someone "with [the] intent that another person engage in conduct constituting a felony that has as an element the use, attempted use, or threatened use of physical force against property or against the person of another." *Id.* The statute does not include a residual clause. Thus, if we accepted Irby's position that § 1111 is not a crime of violence under the force clause, solicitation of first-degree murder would not even be a criminal offense while first-degree murder is a capital offense.

13

at 168 (emphasis in original). We explained that the California statute could be violated without the use of physical force because "a defendant can violate statutes like § 422(a) by threatening to poison another, which involves no use or threatened use of force." *Id.* at 168-69.

Even accepting Irby's position that *Torres-Miguel* would extend beyond threat statutes to crimes such as second-degree retaliatory murder,[6] the distinction we drew in *Torres-Miguel* between indirect and direct applications of force and our conclusion that poison "involves no use or threatened use of force," no longer remains valid in light of *Castleman's* explicit rejection of such a distinction.[7]

---

[6] We have declined to extend *Torres-Miguel* to federal statutes criminalizing bank robbery, *McNeal*, 818 F.3d at 156, and carjacking, *Evans*, 848 F.3d at 247.

[7] We are not the first court to recognize that *Castleman* undermined *Torres-Miguel's* reasoning on this point. *See*, *e.g.*, *Hill*, 832 F.3d at 143-44 (noting that *Castleman* rejects notion that use of poison does not constitute the use of force); *Arellano Hernandez v. Lynch*, 831 F.3d 1127, 1131 (9th Cir. 2016) (noting "reasoning" of *Torres-Miguel* and poison hypothetical "has been rejected by the Supreme Court"); *United States v. Rice*, 813 F.3d 704, 706 (8th Cir. 2016) (noting that courts had reached "differing conclusions" as to "whether a person uses physical force in causing an injury through indirect means such as poisoning," but that "[w]e believe that *Castleman* resolves the question"); *United States v. Dylan Roof*, -- F.Supp.3d --, 2016 WL 8118564, at * 14 (noting that *Castleman* rejects the reasoning of *Torres-Miguel*); *United States v. Williams*, 179 F.Supp.3d 141, 151 (D. Me. 2016) ("In *Castleman*, the Supreme Court rejected the reasoning applied in *Torres-Miguel*"); *United States v. Wheeler*, 2016 WL 783412, at *4 (E.D. Wis. 2016) ("*Torres-Miguel* has been overruled to the extent that it held that a crime may result in death or serious injury without involving the use of physical force"); *United States v. Bell*, 158 F.Supp.3d 906, 917 (N.D. Cal. 2016) ("the reasoning in *Torres-Miguel*—which relies on the notion that an indirect application of force between defendant and victim does not qualify as 'using' physical force . . . was rejected by the Supreme Court"); *United States v. McCallister*, 2016 WL 3072237, at *10 n. 11 (D.D.C. 2016) ("validity of *Torres-Miguel* and its poisoning example has been cast into doubt by *United States v. Castleman*"); *United*

14

In sum, one cannot unlawfully kill another human being without a use of physical force capable of causing physical pain or injury to another, and Irby's conviction for second-degree retaliatory murder falls within the force clause.

III.

To qualify for authorization to file a successive § 2255 motion, Irby must make a showing of possible merit sufficient to warrant further review. Irby cannot do so because second-degree retaliatory murder is a crime of violence under the force clause of § 924(c). *Johnson's* holding, which is limited to the residual clause, "is inapplicable" to Irby's § 924(c) conviction, *Hubbard*, 825 F.3d at 229, and we therefore deny his request for authorization.

*MOTION DENIED*

*States v. McDaniels*, 147 F.Supp.3d 427, 433 (E.D. Va. 2015) ("the Supreme Court rejected the rationale of *Torres-Miguel* in [*Castleman*]").