**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-292

In re:  DEARNTA LAVON THOMAS, a/k/a Bloody Razor,

Movant.

Application for Successive Habeas Authorization Arising from the United States District
Court for the Eastern District of Virginia, at Norfolk.

Submitted:  December 11, 2020                    Decided:  February 23, 2020

Before WILKINSON, AGEE, and RICHARDSON, Circuit Judges.

Motion granted by published opinion.  Judge Richardson wrote the opinion, in which
Judges Wilkinson and Agee concurred.  Judge Wilkinson wrote a concurring opinion.

Geremy C. Kamens, Federal Public Defender, Frances H. Pratt, Assistant Federal Public
Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for
Movant.  G. Zachary Terwilliger, United States Attorney, Daniel T. Young, Assistant
United States Attorney, Alexandria, Virginia, Richard D. Cooke, Assistant United States
Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for
Respondent.

RICHARDSON, Circuit Judge:

Dearnta Thomas seeks authorization to file a successive § 2255 application. His claim rests on the rule announced in *Davis v. United States*, 139 S. Ct. 2319 (2019) (finding that the residual clause of 18 U.S.C. § 924(c)'s crime-of-violence definition was unconstitutionally vague). We face two questions in determining whether to grant his motion: (1) whether *Davis* applies retroactively to cases on collateral review and (2) whether Thomas states a plausible crime-of-violence claim that warrants further exploration by the district court.

Today we join our sister circuits in holding that *Davis* applies retroactively to cases on collateral review. We also find that Thomas has stated a plausible claim for relief that warrants review by a district court. We therefore grant his motion.

## I.    Background

In 2011, Thomas pleaded guilty to a substantive RICO offense. 18 U.S.C. § 1962(c).[1] He also pleaded guilty under § 924(c) to possessing a firearm in furtherance of a crime of violence. The predicate "crime of violence" for the § 924(c) offense was aiding and abetting the commission of VICAR assault with a dangerous weapon. 18 U.S.C.

---

[1] The Racketeer Influenced and Corrupt Organizations Act ("RICO") criminalizes an individual's participation in an organized-crime enterprise. *See* 18 U.S.C. §§ 1961–68. RICO is supplemented by the Violent Crimes in Aid of Racketeering ("VICAR") offense, which "addresses the particular danger posed by those . . . who are willing to commit violent crimes in order to bolster their positions within such enterprises." *United States v. Ayala*, 601 F.3d 256, 266 (4th Cir. 2010). To sustain a VICAR conviction, the defendant must have committed another state or federal crime that fits within VICAR's violent-offense definition, for example, "assault with a dangerous weapon." *See* 18 U.S.C. § 1959(a)(3).

§§ 1959(a)(3), 2. The VICAR offense in turn was predicated on two Virginia state-law offenses: Va. Code Ann. §§ 18.2-53.1 ("Use or display of firearm in committing felony") and 18.2-282 ("Pointing, holding, or brandishing firearm, air or gas operated weapon or object similar in appearance"). Thomas was sentenced to 180 months in prison. He did not appeal his conviction or sentence.

After Thomas's conviction, the Supreme Court decided a line of cases that eventually led to finding § 924(c)'s residual clause, part of the definition of "crime of violence," unconstitutional. First, in 2015, the Supreme Court invalidated the residual clause of the Armed Career Criminal Act's definition of "violent felony" for being unconstitutionally vague. *See Johnson v. United States*, 576 U.S. 591, 606 (2015). Thomas did not file a § 2255 application at that time.

Then in 2018, the Supreme Court relied on *Johnson* to invalidate the residual clause in 18 U.S.C. § 16, the generally applicable "crime of violence" definition. *See Sessions v. Dimaya*, 138 S. Ct. 1204, 1223 (2018). Thomas filed his first § 2255 motion within a year of *Dimaya*'s issuance, arguing that his § 924(c) conviction could not stand based on that decision. The district court denied his motion as time-barred under § 2255(f)(3), finding that the rule Thomas sought to invoke was recognized in *Johnson*, not *Dimaya*, and that Thomas had not filed his motion within one year of *Johnson*'s issuance.

Circuit courts split over whether the principles of *Johnson* and *Dimaya* rendered § 924(c)'s crime-of-violence residual clause unconstitutional. So the Supreme Court granted certiorari. *United States v. Davis*, 139 S. Ct. 2319 (2019). But before the Supreme

3

Court could resolve the circuit split, Thomas sought authorization to file a second § 2255 application, which we denied.

Two months after we denied Thomas authorization, the Supreme Court decided *Davis*, which found § 924(c)'s residual clause unconstitutionally vague. 139 S. Ct. at 2336. Several weeks later, Thomas filed the motion for authorization to file a second or successive § 2255 application at issue here. We have jurisdiction to rule on his motion pursuant to 28 U.S.C. §§ 2244(b)(3)(C) and 2255(h).

## II.     Discussion

To file a second or successive § 2255 application in federal district court, an applicant must first obtain authorization from a court of appeals. 28 U.S.C. § 2255(h). Authorization requires the applicant to either (1) provide "newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the [applicant] guilty of the underlying offense" or (2) show that his claim relies on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." *Id.*

Thomas's application invokes the latter condition, citing *Davis*. He argues that his § 924(c) conviction was not predicated on a "crime of violence" because the two state-law offenses underlying his VICAR conviction cannot satisfy § 924(c)'s force clause after *Davis* invalidated § 924(c)'s residual clause.

But at this stage, Thomas need not *definitively* show that he will prevail on his claim. Instead, he must only "make[] a *prima facie* showing that the application satisfies the

4

requirements." § 2244(b)(3)(C) (emphasis added).[2]  To do so, he must first "show that his claim relies on a new and retroactive rule of constitutional law."  *In re Irby*, 858 F.3d 231, 233 (4th Cir. 2017).  And then he must show that his claim is "plausible," thus making "a sufficient showing of possible merit to warrant a fuller exploration by the district court." *Id.* (quoting *In re Hubbard*, 825 F.3d 225, 229–30 (4th Cir. 2016)).  We address each requirement in turn, ultimately granting Thomas authorization to file his habeas application in the district court.[3]

A.     **Retroactivity**

We first consider whether *Davis* (1) announced a new rule of constitutional law (2) made retroactive to cases on collateral review (3) by the Supreme Court (4) that was previously unavailable.  28 U.S.C. § 2255(h)(2); *see Tyler v. Cain*, 533 U.S. 656, 662

---

[2] Thomas seeks to challenge his federal custody under § 2255, which incorporates the certification requirements in § 2244.  28 U.S.C. § 2255(h) ("A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals.").

[3] Section 2244(b)(1) also requires that we dismiss a "claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application."  28 U.S.C. § 2244(b)(1).  We have not waded into the circuit split over whether this requirement for successive § 2254 applications also applies to federal inmates seeking to file successive § 2255 applications. *See Avery v. United States*, 140 S. Ct. 1080, 1080–81 (2020) (Kavanaugh, J., statement respecting the denial of certiorari); *see also United States v. Winestock*, 340 F.3d 200, 204 (4th Cir. 2003).  And we need not do so here because Thomas's prior § 2255 application and authorization motion did not bring the same claim that he now puts forth.

5

(2001). The government does not address this question in its brief, apparently agreeing with our sister circuits that *Davis* satisfies these requirements.[4] That concession is correct.

First, *Davis*'s constitutional rule is new. A "case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague v. Lane*, 489 U.S. 288, 301 (1989) (plurality). A rule is "dictated by precedent" if it "was apparent to all reasonable jurists." *Lambrix v. Singletary*, 520 U.S. 518, 527–28 (1997). But even if a decision does not itself announce a new rule, extending an "old rule" "in a novel setting" creates a new rule if the "old rule" is applied "in a manner that was not dictated by precedent." *Stringer v. Black*, 503 U.S. 222, 228 (1992).

While *Davis* looked to *Johnson* and *Dimaya* in invalidating § 924(c)'s residual clause as unconstitutionally vague, that decision was not dictated by that precedent. 139 S. Ct. at 2326–27. The *Davis* Court extended the holdings of *Johnson* and *Dimaya* to invalidate a different—even if analogous—provision in § 924(c). *United States v. Reece*, 938 F.3d 630, 634 (5th Cir. 2019). In doing so, *Davis* resolved a substantial circuit split over the constitutionality of § 924(c)'s residual clause after *Dimaya*. *See Davis*, 139 S. Ct. at 2325 n.2 (collecting cases); *see also Butler v. McKellar*, 494 U.S. 407, 415 (1990) ("[T]he differing positions taken by the judges of the Court of Appeals" is evidence that a

---

[4] *King v. United States*, 965 F.3d 60, 64 (1st Cir. 2020); *United States v. Reece*, 938 F.3d 630, 635 (5th Cir. 2019); *In re Franklin*, 950 F.3d 909, 910–11 (6th Cir. 2020); *United States v. Bowen*, 936 F.3d 1091, 1097–101 (10th Cir. 2019); *In re Hammoud*, 931 F.3d 1032, 1038–39 (11th Cir. 2019); *see also In re Matthews*, 934 F.3d 296, 301 (3d Cir. 2019) (authorizing a successive § 2255 motion because applicant made a "prima facie showing" that *Davis* announced a new rule of constitutional law that was made retroactive by the Supreme Court, without so holding).

case's outcome "was susceptible to debate among reasonable minds."). As the arguments by several circuit courts and the dissent in *Davis* reflect, the rule ultimately adopted was open to reasonable debate and not "dictated by" *Johnson* and *Dimaya*. *Teague*, 489 U.S. at 301.

But the Supreme Court mandates that we look to the "precedent existing at the time [Thomas]'s conviction became final" in 2011. *Teague*, 489 U.S. at 301; *see also United States v. Morris*, 429 F.3d 65, 70 (4th Cir. 2005); *O'Dell v. Netherland*, 95 F.3d 1214, 1221 (4th Cir. 1996). And in 2011, neither *Johnson* nor *Dimaya* had been decided. So if *Davis* was not dictated by precedent even after *Johnson* and *Dimaya*, it certainly was not dictated by precedent in 2011. *Cf. Welch v. United States*, 136 S. Ct. 1257, 1264 (2016) ("It is undisputed that *Johnson* announced a new rule."). So the *Davis* rule is a new one for purposes of this motion.

Second, the new rule in *Davis* applies retroactively to cases on collateral review. "*Teague* and its progeny recognize two categories of decisions that fall outside th[e] general bar on retroactivity": (1) new substantive rules and (2) new "watershed rules of criminal procedure." *Id.* (quoting *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004)). A "substantive" rule "alters the range of conduct or the class of persons that the law punishes." *Schriro*, 542 U.S. at 353. This category includes rules that "narrow the scope of a criminal statute by interpreting its terms as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish." *Id.* at 352 (internal citation omitted). By contrast, a procedural rule "regulate[s] only the manner of determining the defendant's culpability." *Id.* at 353 (emphasis omitted).

7

*Davis*'s rule is substantive. Before *Davis*, someone who had committed a "crime of violence" that satisfied the definition in the residual clause, but not the definition in the force clause, was subject to prosecution under § 924(c). But after *Davis*, that same person cannot face a § 924(c) charge. So *Davis* placed that individual and others like him beyond the government's power to prosecute. *See Schriro*, 542 U.S. at 352; *see also Welch*, 136 S. Ct. at 1265 (holding that *Johnson*, which invalidated the Armed Career Criminal Act's residual clause, announced a new substantive rule). The *Davis* rule is thus substantive.

Third, it was the Supreme Court that made *Davis* retroactive. The Supreme Court did not state that *Davis* was retroactive in *Davis* itself. But such an express statement by the Supreme Court is not required. *Tyler*, 533 U.S. at 668 (O'Connor, J., concurring) ("a single case that expressly holds a rule to be retroactive is not a *sine qua non*" for satisfying § 2244(b)(2)(A)'s requirement that the Supreme Court itself make the rule retroactive). Instead, a combination of Supreme Court "cases can render a new rule retroactive . . . if the holdings in those cases necessarily dictate retroactivity of the new rule," for example, by saying that "all" of a certain category of rules "apply retroactively." *Id.* at 666 (majority opinion). Justice O'Connor's concurrence in *Tyler* describes how two Supreme Court cases can be read together to 'make' a rule retroactive:

> [I]f [the Supreme Court] hold[s] in Case One that a particular type of rule applies retroactively to cases on collateral review and hold[s] in Case Two that a given rule is of that particular type, then it necessarily follows that the given rule applies retroactively to cases on collateral review. In such circumstances, we can be said to have 'made' the given rule retroactive to cases on collateral review.

*Id.* at 668–69 (O'Connor, J., concurring); *see San-Miguel v. Dove*, 291 F.3d 257, 260 (4th Cir. 2002).

That logic applies here. The Supreme Court has held that new substantive rules of constitutional law "generally" apply retroactively to cases on collateral review. *Welch*, 136 S. Ct. at 1264. And *Davis* announced a new substantive constitutional rule. So *Davis*'s retroactivity has been "necessarily dictate[d]" by prior Supreme Court cases. *Tyler*, 533 U.S. at 666 (majority opinion).

Finally, an argument based on the rule announced in *Davis* was previously unavailable to Thomas. To satisfy this requirement, the new constitutional rule Thomas puts forth must not have been available to him when he brought his last federal proceeding—including an authorization motion—challenging his conviction. *In re Williams*, 364 F.3d 235, 239 (4th Cir. 2004). The last time Thomas challenged his conviction in federal court was when he filed his first pre-filing motion for authorization in March 2019. *Davis* was not decided until several months later. So at the time of his last motion, Thomas did not have the opportunity to bring a claim based on *Davis*.

So we conclude that *Davis* announced a new substantive rule of constitutional law that has been made retroactive to cases on collateral review by the Supreme Court and that was previously unavailable to Thomas. And so by invoking *Davis*, Thomas's application overcomes the first hurdle to granting his motion.

## B. Plausible claim for relief

Having found Thomas's crime-of-violence claim relies on a new retroactive rule, we must ask if he states a "'plausible' claim for relief." *In re Irby*, 858 F.3d at 233 (quoting

9

*In re Hubbard*, 825 F.3d at 230). That determination "may entail a cursory glance at the merits" but "the focus of the inquiry must always remain on" the authorizing standards in §§ 2244(b)(2) and 2255(h). *In re Hubbard*, 825 F.3d at 231. In doing so, "we need not decide whether [the applicant] will ultimately prevail on his claim." *Id.* at 229; *see also In re Stevens*, 956 F.3d 229, 233 (4th Cir. 2020) (noting that once a prima facie showing satisfies the authorizing standard in § 2244(b)(2)(B), "we may not plod along any further").

But we need not blind ourselves to reality. A claim is not plausible if it would clearly fail, as authorizing such a claim would be "an exercise in futility." *In re Vassell*, 751 F.3d 267, 271 (4th Cir. 2014); *see also In re Williams*, 330 F.3d 277, 284 (4th Cir. 2003). For that reason, we have declined to authorize successive applications under both §§ 2254 and 2255 on procedural grounds, for example, when the application would be untimely. *In re Vassell*, 751 F.3d at 272; *see also In re Phillips*, 879 F.3d 542, 546–47 (4th Cir. 2018) (application for authorization under § 2254 raised claim presented in a prior application in violation of § 2244(b)(1)).

Taking a "cursory glance at the merits," we determine that Thomas has stated a plausible claim for relief. *In re Williams*, 330 F.3d at 282; *see also In re Irby*, 858 F.3d at 233. In *United States v. Mathis*, we considered whether two VICAR offenses predicated on violations of Virginia law qualified as crimes of violence under § 924(c)'s force clause. 932 F.3d 242, 264–67 (4th Cir. 2019). In doing so, we followed the arguments of the parties and looked through the elements of the VICAR offense to consider whether the charged state-law predicates were categorically crimes of violence. *Id.* Thomas argues that we should follow that approach in this case. And if we do so, he makes a plausible

10

argument that his *Davis* claim could prevail. *See* Movant's Opening Br. 18–20 (contending that Va. Code Ann. § 18.2-282[5] does not satisfy the force clause because a person could "point, hold or brandish" a firearm "in such manner as to reasonably induce fear in the mind of another" with a mens rea of recklessness); *id.* at 21–24 (arguing that Va. Code Ann. § 18.2-53.1[6] does not qualify as a crime of violence because there is a "realistic probability" that an individual could be convicted of the offense by using or threatening the use of force against himself, rather than "against another").

But our recent holding in *United States v. Keene*, 955 F.3d 391 (4th Cir. 2020), suggests that we need not look through the VICAR elements and examine only the underlying state-law predicates. In *Keene*, we held that to convict a defendant of VICAR assault with a dangerous weapon, the defendant must have "engag[ed] in conduct that violated both th[e] enumerated federal offense as well as a state law offense, regardless whether the two offenses are a categorical 'match.'" *Id.* at 398–99. And *Keene* held that

---

[5] "It shall be unlawful for any person to point, hold or brandish any firearm or any air or gas operated weapon or any object similar in appearance, whether capable of being fired or not, in such manner as to reasonably induce fear in the mind of another or hold a firearm or any air or gas operated weapon in a public place in such a manner as to reasonably induce fear in the mind of another of being shot or injured." Va. Code Ann. § 18.2-282.

[6] "It shall be unlawful for any person to use or attempt to use any pistol, shotgun, rifle, or other firearm or display such weapon in a threatening manner while committing or attempting to commit murder, rape, forcible sodomy, inanimate or animate object sexual penetration as defined in § 18.2-67.2, robbery, carjacking, burglary, malicious wounding as defined in § 18.2-51, malicious bodily injury to a law-enforcement officer as defined in § 18.2-51.1, aggravated malicious wounding as defined in § 18.2-51.2, malicious wounding by mob as defined in § 18.2-41 or abduction." Va. Code Ann. § 18.2-53.1.

one element of a VICAR-assault-with-a-dangerous-weapon offense is that the defendant committed the enumerated federal offense, "assault with a dangerous weapon." *Id.* at 397. That suggests that we are not limited to considering whether the charged state-law predicate offenses are categorically crimes of violence independent of VICAR.[7] And the government explains that doing so permits us to consider an easier question: whether the assault-with-a-dangerous-weapon element satisfies § 924(c)'s force clause. *See United States v. Bryant*, 949 F.3d 168, 182 (4th Cir. 2020) (explaining for a different statute that "assault requires at least *some* use or threatened use of force" and the "use of a dangerous weapon to put the victim's life in jeopardy transforms the force into violent physical force" that satisfies § 924(c)'s force clause); *see also Manners v. United States*, 947 F.3d 377, 382 (6th Cir. 2020) (following this approach and holding that a § 1959(a)(3) VICAR conviction is a crime of violence under § 924(c)'s force clause).

Based on our cursory glance at these competing approaches, we find that Thomas has stated a plausible claim for relief that warrants further exploration by the district court. *See In re Irby*, 858 F.3d at 233; *In re Hubbard*, 825 F.3d at 229.

*     *     *

Thomas has satisfied the requirements for authorization to file a second or successive § 2255 application. *Davis* applies retroactively to cases on collateral review,

---

[7] In *Mathis*, neither party questioned the propriety of looking through the VICAR offense to the charged state-law predicates to conduct the crime-of-violence analysis, nor did we hold that we must ignore VICAR's "assault" element.

12

and Thomas has made a plausible claim that *Davis*'s new rule requires a different outcome in his case.  His motion is therefore

GRANTED.

WILKINSON, Circuit Judge, concurring:

I am happy to concur in the majority opinion in this case. I do so for two reasons.

I.

The first concerns the need for pre-filing authority to file a successive habeas corpus petition. *See* 28 U.S.C. § 2255(h). Congress did not enact AEDPA's pre-filing requirement on a whim. It was a gateway decidedly not designed for universal collateral admissions. *See Felker v. Turpin*, 518 U.S. 651, 664 (1996) (recognizing that AEDPA's pre-filing authorization requirement "further restricts the availability of relief to habeas petitioners").

I do not understand the majority opinion to regard this requirement as any sort of open door. My fine colleagues rightly recognize, for example, that there is no need to grant authorization to applications that are untimely or that raise claims presented in an earlier petition. *See* Maj. Op., *ante* at 10 (citing *In re Vassell*, 751 F.3d 267 (4th Cir. 2014); *In re Phillips*, 879 F.3d 542 (4th Cir. 2018)). These examples are buttressed by the requirement that petitioner show a plausibly meritorious claim. As the opinion notes, the standard at this stage is whether the movant "states a 'plausible claim for relief.'" Maj. Op, *ante* at 9 (quoting *In re Irby*, 858 F.3d 231, 233 (4th Cir. 2017) (internal quotation marks and citation omitted)). This makes good on the statement in *Vassell* that we are not required to engage in "an exercise in futility." 751 F.3d at 271.

Our criminal justice system faces a burgeoning tension between prospectivity and retroactivity. A romance with retroactivity not only threatens justice through staleness. It risks a consequential misallocation of limited resources. Serious crimes are occurring as we speak. Prosecutors should not be so consumed with past convictions that they are

14

hampered in the ability to prosecute present crimes. Public defenders should not be stretched so thin that they cannot afford defendants the robust defense they deserve at the time it will do the most good.

The budding romance with retroactivity does have its downside. Every crime is committed at some point (or over some span) of time. And as the Ex Post Facto Clause instructs, *see* U.S. Const. art. I, § 9, it is often not only right but required to apply law as it exists at that finite point. Of course, law changes in all directions over time. But it imposes a Promethean task on criminal justice to revisit cases repeatedly in order to keep them "current." And to revisit some cases but not others and to correct some alleged errors but not others will create a whole new perception of unfairness. The entire enterprise shall soon enough outstrip our best intentions; we shall be chasing our tails. As Professor Paul Bator famously said, "There comes a point where a procedural system which leaves matters perpetually open no longer reflects humane concern but merely anxiety and a desire for immobility." Paul M. Bator, *Finality in Criminal Law and Federal Habeas Corpus for State Prisoners*, 76 Harv. L. Rev. 441, 452–53 (1963). Such a fate has already befallen some criminal justice systems, including, for example, those of India and Brazil. *See United States v. Hawkins*, 724 F.3d 915, 918 (7th Cir. 2013) (Posner, J.).

From the inmate's point of view, the retroactive perspective also carries risks if permitted to compromise the spirit of redemption. This is true both in prison and beyond. I do not underestimate for one moment the pitfalls and obstacles that await prisoners upon release. Nor do I discount the instances where some serious injustice has been done. But every person has the potential to make a positive difference to his or her community going

15

forward if, that is, the prospective perspective is not overcome by bitterness and resentment at the past.

Lives are irreparably damaged by unduly harsh sentences. Lives are also irreparably scarred by the commission of serious crimes. The First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018), represents a laudable effort on the part of Congress to redress the ills of excessive incarceration. But AEDPA is a very different sort of statute, designed in the main to respect the finality of pleas, verdicts, sentencings, and judgments. Unraveling either Congressional effort is not a judicially sober action, and I do not understand the majority opinion to do so.

## II.

I likewise commend the majority's approach to Thomas's 18 U.S.C. § 924(c) conviction. It holds open the possibility that, "to convict a defendant of VICAR assault with a dangerous weapon," we need only decide whether the crucial "assault with a dangerous weapon" element satisfies § 924(c)'s force clause. Maj. Op., *ante* at 11–12 (citing *United States v. Keene*, 955 F.3d 391, 397–99 (4th Cir. 2020)). That is a far simpler and more straight-forward approach than looking through the VICAR elements to determine whether the underlying state predicates qualify. Conducting the perennially quarrelsome exercise of deciding whether there is a categorical match between the state predicate crime and the generic definition of a VICAR offense is neither legally necessary nor economically desirable. Agreeing with the majority's commonsensical allusion to simplicity, *see* Maj. Op., *ante* at 11–12, I likewise concur in its opinion.

16