**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 23-257**

───────────

In re:  SCOTT LEWIS RENDELMAN,

  Movant.

───────────

On Motion for Authorization to File Successive 28 U.S.C. § 2255 Motion in the United States District Court for the District of Maryland, at Greenbelt.  (8:07−cr−00331−JKB−1)

───────────

Argued:  September 26, 2024                    Decided:  February 21, 2025

───────────

Before DIAZ, Chief Judge, RUSHING, Circuit Judge, and KEENAN, Senior Circuit Judge.

───────────

Motion granted by published opinion.  Chief Judge Diaz wrote the opinion, in which Judge Rushing and Senior Judge Keenan joined.

───────────

**ARGUED:**  Caroline Anna Schechinger, KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C., Washington, D.C., for Movant.  Jason Daniel Medinger, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Respondent.  **ON BRIEF:**  Erek L. Barron, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Respondent.

───────────

DIAZ, Chief Judge:

In 2008, Scott Rendelman was convicted for mailing threatening communications under 18 U.S.C. § 876(c). The district court instructed the jury that the government need prove only that a "reasonable person" would find Rendelman's communications threatening. Fifteen years later, the Supreme Court held in *Counterman v. Colorado*, 600 U.S. 66 (2023), that the First Amendment requires the government to prove—in true-threats cases—that the defendant was subjectively aware of the threatening nature of his statements. *Id.* at 73.

Rendelman now seeks authorization to file a successive 28 U.S.C. § 2255 motion to vacate his conviction based on *Counterman*. The government agrees that Rendelman has satisfied the gatekeeping requirements in 28 U.S.C. § 2255(h) but asks that we also impose a plausibility requirement. We decline to do so. Because Rendelman has satisfied the gatekeeping requirements, we grant his motion seeking authorization to file a successive § 2255 motion.

I.

A.

In 1986, Rendelman was serving a state prison term for embezzlement. He alleges that while incarcerated, his cellmate raped him. Rendelman then sent threatening letters to those involved with his embezzlement case, who he "felt had put him in that situation." J.A. 167. Those letters landed Rendelman in federal custody, where he says that he was raped four more times. During this time, he grew to blame "prison and government

2

officials . . . for putting him in rape situations," J.A. 168, so he expanded his letter-writing campaign to federal judges and public officials.

Despite the additional state and federal convictions and the mounting prison sentences that resulted from his actions, he "felt he had to continue writing the letters for as long as he remained incarcerated" to show that his imprisonment failed to "achieve[] the government's goal of rehabilitating [him] to a crime free life." J.A. 169. Rendelman's state and federal sentences ended in 2001, and he was released from prison.

In 2005, Rendelman was arrested on an outstanding state warrant, apparently stemming from a threatening letter he sent to a Maryland judge. While incarcerated, Rendelman picked up where he left off and mailed the letters leading to the conviction he now seeks to challenge. These letters threatened bodily harm to a state court judge, a state prosecutor, a local attorney, the President of the United States, and White House employees. In a letter he sent during this time, Rendelman explained, "I write the letters as my way of demonstrating to the officials that this is not the way you treat someone if you are trying to achieve a positive result." J.A. 21–22.

A grand jury indicted Rendelman on six counts of mailing threatening communications, in violation of 18 U.S.C. § 876(c).[1]

At trial, Rendelman represented himself with the help of standby counsel. Rendelman wanted to present a defense that the letters were not in fact threats but merely

---

[1] Rendelman was also indicted on one count of threatening the President, in violation of 18 U.S.C. § 871. That count was later dismissed on the government's motion.

3

"protests." J.A. 26–29. But the district court informed him that "[i]t is not what is in Mr. Rendelman's mind that is relevant. It's what a reasonable person receiving that communication would believe it to be, and that's how I intend to instruct the jury on the question." J.A. 29.

After the prosecution rested, Rendelman moved to dismiss the indictment on the ground that there was no evidence that his threats were "true threats." J.A. 48. The district court denied the motion, reiterating that the test is what a "reasonable person" receiving the communications would think.

Rendelman didn't testify at trial, nor did he call any witnesses. As relevant here, the district court instructed the jury:

> A statement is a threat if it was made under such circumstances that a reasonable person hearing or reading the statement would understand it as a serious expression of intent to inflict injury. To determine whether or not the defendant made a threat, you should consider the circumstances under which the statement was made, including its context with respect to surrounding conversation, the language the defendant used, and the reaction of those who heard or read the statement.

J.A. 77.

The jury found Rendelman guilty on all six counts, and the district court sentenced him to fifteen years in prison and three years of supervised release.[2] We affirmed his conviction. *United States v. Rendelman*, 641 F.3d 36 (4th Cir. 2010).

---

[2] Rendelman has served his prison term for this conviction. But he has yet to serve the three-year term of supervised release imposed because he is incarcerated on a separate conviction for contempt of court, retaliating against federal officials, and threatening the President. *United States v. Rendelman*, 495 F. App'x 727, 728 (7th Cir. 2012).

4

Rendelman twice tried to vacate his sentence under 28 U.S.C. § 2255. The district court denied his first § 2255 motion. And we later declined to authorize Rendelman to file a second § 2255 motion.

B.

In 2023, the Supreme Court decided *Counterman v. Colorado*. Counterman was convicted for making threatening statements under an objective standard that didn't require the state to prove he had any subjective intent to threaten. 600 U.S. at 70–71. He appealed, arguing that the First Amendment requires such proof in a criminal prosecution for a true threat. *Id.* at 72–73.

The Court explained that true threats of violence fall outside the First Amendment's protections and can be prosecuted as crimes. *Id.* at 69. Though a statement can be considered a true threat "based solely on its objective content," *id.* at 72, the Court held that the First Amendment requires more in a true-threat prosecution. The government must prove the defendant had "some understanding of his statements' threatening character." *Id.* at 73. At a minimum, it must prove a mens rea of recklessness, meaning the defendant "consciously disregarded a substantial risk that his communications would be viewed as threatening violence." *Id.* at 69.

Rendelman now seeks to challenge his true-threat conviction in light of *Counterman*. He asserts that he was "unconstitutionally prevented from arguing and introducing evidence to prove his lack of subjective intent to make true threats against the recipients of his letters." Movant's Opening Br. at 8 (cleaned up). He argues that under *Counterman*, the district court's jury instructions violated the First Amendment and

5

allowed the jury "to find [him] guilty of conduct the Supreme Court has now made clear is not criminal." *Id.* at 16.

Because Rendelman previously sought § 2255 relief, he moved pro se for this court's authorization to file a successive motion. We appointed counsel to represent Rendelman.[3]

## II.

This motion presents two issues: whether Rendelman has satisfied the gatekeeping requirements in 28 U.S.C. § 2255(h) and whether we require anything more to grant his authorization motion. We address each in turn.

## A.

We first consider whether Rendelman has satisfied the § 2255(h) gatekeeping requirements to file a successive § 2255 motion. We conclude that he has.

After a prisoner has filed an unsuccessful § 2255 motion challenging his conviction, the court of appeals must give authorization for him to file another. 28 U.S.C. § 2255(h). To receive authorization, a movant need only "make a prima facie showing that his claim satisfies the § 2255(h) gatekeeping test"—or, in other words, that his claim satisfies either § 2255(h)(1) or (2). *In re Graham*, 61 F.4th 433, 442 (4th Cir. 2023) (cleaned up).

---

[3] We're grateful to Caroline A. Schechinger for her fine representation in service to Rendelman and the court.

This prima facie showing is "simply a sufficient showing of possible merit to warrant a fuller exploration by the district court."[4] *In re Williams*, 330 F.3d 277, 281 (4th Cir. 2003) (quoting *Bennett v. United States*, 119 F.3d 468, 469–70 (7th Cir. 1997)). If "it appears reasonably likely that the motion satisfies the stringent requirements for the filing of a second or successive petition, we shall grant authorization." *Graham*, 61 F.4th at 442 (cleaned up).

The parties say that Rendelman's *Counterman* claim satisfies the relevant requirements, which allow for successive motions where (1) "a new rule of constitutional law" (2) "made retroactive to cases on collateral review by the Supreme Court" (3) "that was previously unavailable" entitles a movant to relief. 28 U.S.C. § 2255(h)(2). We agree.

First, *Counterman* announced a new rule of constitutional law. "[A] case announces a new rule when it breaks new ground or imposes a new obligation on the [government]." *Teague v. Lane*, 489 U.S. 288, 301 (1989). But a rule isn't new if it was "*dictated* by precedent existing at the time the defendant's conviction became final." *Id.* A rule is "dictated by precedent" if it was "apparent to all reasonable jurists." *In re Thomas*, 988 F.3d 783, 789 (4th Cir. 2021) (quoting *Lambrix v. Singletary*, 520 U.S. 518, 527–28 (1997)).

---

[4] In *In re Williams*, 330 F.3d 277 (4th Cir. 2003), we addressed the prima facie standard in 28 U.S.C. § 2244(b)(3)(C) in the context of an authorization motion for a successive habeas corpus petition challenging a state conviction. *Id.* at 278. Because 28 U.S.C. § 2255(h) incorporates by reference the certification procedures for successive applications from § 2244, a prisoner seeking to file a successive § 2255 motion challenging a federal conviction must make the same prima facie showing—but for one of the two § 2255(h) standards. *Graham*, 61 F.4th at 439.

*Counterman*'s rule—that in true-threat prosecutions, the First Amendment requires the government to prove "that the defendant had some subjective understanding of the threatening nature of his statements," 600 U.S. at 69—wasn't dictated by precedent. Prior to *Counterman*, "[c]ourts [were] divided about . . . whether the First Amendment requires proof of a defendant's subjective mindset in true-threats cases." *Id.* at 72. *Compare, e.g.*, *United States v. White*, 810 F.3d 212, 220 (4th Cir. 2016) (no), *with United States v. Heineman*, 767 F.3d 970, 975 (10th Cir. 2014) (yes). And two Justices dissented from the Court's decision in *Counterman*.

"As the arguments by several circuit courts and the dissent[s] in [*Counterman*] reflect, the rule ultimately adopted was open to reasonable debate and not dictated by [precedent]." *Thomas*, 988 F.3d at 789 (cleaned up); *see also Butler v. McKellar*, 494 U.S. 407, 415 (1990). Therefore, *Counterman* announced a new rule.

Second, *Counterman* applies retroactively to cases on collateral review. New substantive rules apply retroactively; new procedural rules don't. *Edwards v. Vannoy*, 593 U.S. 255, 276 (2021).

A new rule is substantive when it "alters the range of conduct or the class of persons that the law punishes," *Schriro v. Summerlin*, 542 U.S. 348, 353 (2004), in other words, "plac[ing] particular conduct or persons covered by the statute beyond the State's power to punish," *id.* at 352. Such rules generally apply retroactively because they "necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal." *Id.* (cleaned up).

*Counterman* placed particular conduct—making communications that are objectively threatening but not subjectively understood by the speaker as threatening—"beyond the State's power to punish." *Id.* Thus, *Counterman*'s rule is a substantive one that applies retroactively.

Finally, *Counterman* was previously unavailable to Rendelman. A new rule is previously unavailable if it "was not available to the petitioner 'when he brought his last federal proceeding—including an authorization motion—challenging his conviction.'" *Graham*, 61 F.4th at 442 (quoting *Thomas*, 988 F.3d at 790). Rendelman's "last federal proceeding . . . challenging his conviction" was the authorization motion he filed in 2015. As *Counterman* was decided in 2023, its rule was unavailable to him during the 2015 proceeding.

In sum, *Counterman* announced a new rule of constitutional law that applies retroactively and was previously unavailable to Rendelman. The jury that convicted Rendelman wasn't instructed that it must find that he "had some subjective understanding of the threatening nature of his statements" as required by *Counterman*. *Counterman*, 600 U.S. at 69. Thus, Rendelman has met the standard for filing a successive motion to challenge his conviction based on this instructional error.

## B.

Yet the government urges us to deny Rendelman authorization because he hasn't stated a plausible claim to relief. We rejected this reading of our precedents in *In re Graham*, 61 F.4th 433 (4th Cir. 2023), and we do so again here.

9

The government argues that, in addition to the § 2255(h) gatekeeping requirements, Rendelman "must show that his claim is 'plausible'" to make the required "prima facie showing." Gov't's Resp. Br. at 13–14 (quoting *In re Irby*, 858 F.3d 231, 233 (4th Cir. 2017)). The government concedes that there was instructional error. But even so, it contends that Rendelman "fails to demonstrate a plausible claim to relief based on the facts of his case," *id.* at 3, because he can't show that the instructional error "had substantial and injurious effect or influence in determining the jury's verdict," as required for relief under § 2255, *id.* at 18 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993); *United States v. Said*, 26 F.4th 653, 660–61 (4th Cir. 2022)). As the government would have it, Rendelman's "repeated, graphic, hateful" threats demonstrate "a reckless disregard for how his actions would be received by his victims," which would satisfy *Counterman*'s minimum mens rea of recklessness. *Id.* at 10.

Rendelman counters that this is a merits argument that "asks [us] to go beyond the statutory gatekeeping requirements." Reply Br. at 4. In Rendelman's view, the focus of the "prima facie showing" required at this stage is "'whether [the movant] is reasonably likely to satisfy the § 2255(h) standard,' not . . . whether his claim is 'plausible' as a matter of fact." *Id.* at 6 (quoting *Graham*, 61 F.4th at 442 n.4). We agree.

In *Graham*, we reiterated that the focus of the "prima facie showing" is whether a movant can satisfy the § 2255(h) standard. *Graham*, 61 F.4th at 442 n.4. We observed that some of our precedents interpreted that showing to require that a movant "make a 'plausible' claim for relief." *Id.* (quoting *Irby*, 858 F.3d at 233). But because this requirement departs from our earlier decision in *In re Williams*, 330 F.3d 277 (4th Cir.

10

2003), we explained that we are required to "adhere to the earlier of the conflicting opinions." *Graham*, 61 F.4th at 442 n.4 (cleaned up).

In *Williams*, we adopted the Seventh Circuit's "prima facie" standard requiring "a sufficient showing of possible merit to warrant a fuller exploration by the district court." 330 F.3d at 281 (quoting *Bennett*, 119 F.3d at 469). That showing "relates to the possibility that the claims in a successive application will satisfy the stringent requirements for the filing of a second or successive petition, not the possibility that the claims will ultimately warrant a decision in favor of the applicant." *Id.* at 282 (cleaned up).

We recognized that "a cursory glance at the merits" may sometimes be necessary— for example, to confirm that a movant seeking authorization to challenge his conviction based on a constitutional error has alleged "some constitutional violation." *Id.*; *see also In re Hubbard*, 825 F.3d 225, 231–32 (4th Cir. 2016). But that cursory glance is a far cry from the plausibility requirement the government asks us to impose.[5] Rather, "the focus of [our] inquiry" at this stage "must always remain on the [§ 2255(h) gatekeeping] standards." *Williams*, 330 F.3d at 282; *see also Graham*, 61 F.4th at 442 n.4.

We've already found that Rendelman has satisfied the § 2255(h) gatekeeping requirements. There isn't an additional plausibility requirement he must meet. And if the

---

[5] We have at times found it appropriate to reach certain issues preliminary to the merits at the authorization motion stage. *E.g.*, *In re Vassell*, 751 F.3d 267, 271 (4th Cir. 2014) (considering "preliminary question" of timeliness where movant's "successive § 2255 motion [was] plainly [time-]barred as a matter of law"). But the government has not raised such issues here.

11

"cursory glance" envisioned in *Williams* is warranted here, it's no barrier to Rendelman's motion, which alleges a constitutional violation.

*Counterman* is on point. Rendelman was prosecuted for a true-threat offense. The jury wasn't instructed that the government had to prove beyond a reasonable doubt that he subjectively intended to threaten another, and the government acknowledges that this omission was error. Gov't's Resp. Br. at 18. Whether that error warrants relief under § 2255 is a merits question for the district court to decide in the first instance when it considers Rendelman's § 2255 motion. *See Hubbard*, 825 F.3d at 231.

III.

For these reasons, we authorize Rendelman to file a successive § 2255 motion.

*MOTION GRANTED*

12